Donald A. MILLER, Plaintiff,

v.

Gray DAVIS, et al., Defendant.

No. CV 05–2625 FMC(PJWX).

United States District Court, C.D. California.

March 8, 2006.

Richard Hamlish, Richard Hamlish Law Offices, Westlake Village, CA, for Plaintiff.

Robert F. Helfand, Deputy Attorney General, Office of the Attorney General, Los Angeles, CA, for Defendant.

## ORDER GRANTING MOTIONS TO DISMISS

COOPER, District Judge.

The matter is before the Court on Defendant Gray Davis's Motion to Dismiss (docket # 38). The Court has reviewed the moving, opposition, and reply documents submitted in connection with this Motion. The matter was heard on March

6, 2006, at which time the parties were in receipt of the Court's tentative Order. For the reasons set forth below, the Court grants Defendant's Motion.

## I. Allegations

Plaintiff's First Amended Complaint alleges that he was deprived of certain constitutional and civil rights arising out of a series of events following his conviction and incarceration in 1980. The complaint alleges the following: That in 1980, he was convicted of conspiracy to commit murder and was sentenced to a term of 25 years to life in prison. Plaintiff applied for parole in 1996, but was denied. Plaintiff again applied for parole in 1998 and was again denied.

Plaintiff applied for parole in 1999, and on February 18, he was deemed suitable for parole and a parole date was set. Defendants referred their grant of parole to Governor Davis, who reversed the Board's decision.

Plaintiff applied for parole in 2000, and on October 2, the board again found him suitable for parole, set a parole date, and referred the matter to the Governor. The Governor again reversed the Board's decision. On August 20, 2001, the California Court of Appeal vacated the Governor's reversal. Plaintiff was entitled to a progress hearing no later than October 19, but instead, an en banc hearing of the parole board was held on November 13, 2001. On December 19, 2001, the grant of parole to plaintiff was reaffirmed, and a release date of June 18, 2002, was set.

On March 20, 2002, the Governor requested the parole board review its decision. On April 9, the Board again reaffirmed the grant of parole to plaintiff. "Plaintiff was paroled on June 18, 2005." [1]

## II. Statute of Limitations

The former Governor, who is sued in his individual capacity,[2] moves to dismiss on the basis that the present claims are barred by the relevant statute of limitations.

Federal law determines when a § 1983 claim accrues. *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153–54 (9th Cir.2000). "[A] claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir.1999).

Section 1983 claims are subject to the forum state's statute of limitations for personal injury actions. *Knox v. Davis*, 260 F.3d 1009, 1012 (9th Cir.2001). Until January 1, 2003, the California statute of limitations for personal injury actions was one year; effective January 1, 2003, the limitations period was extended to two years. *Compare* Cal.Code Civ. Pro. § 340 *with* Cal.Code Civ. Pro. § 335.1. If Plaintiff has asserted any claims that were not time barred on the effective date of the change in the limitations period, Plaintiff receives the benefit of the extension. *Mudd v. McColgan*, 30 Cal.2d 463, 468, 183 P.2d 10 (1947) ("It is settled law of this state that an amendment which enlarges a period of limitation applies to pending mat-

---

**1.** Because of inconsistent statements in the pleading concerning plaintiff's release date, the Court instructed counsel for plaintiff to provide documentation concerning plaintiff's release. The Court has reviewed the documentation provided by plaintiff, which establishes that plaintiff was released from prison custody on June 18, 2002, and released from parole on June 18, 2005.

**2.** As a state official, the Governor may not be sued in his official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (noting that the Eleventh Amendment bars suits for damages against state officials sued in their official capacity).

ters where not otherwise expressly excepted. Such legislation affects the remedy and is applicable to matters not already barred ....."); *accord Mojica v. 4311 Wilshire, LLC,* 131 Cal.App.4th 1069, 1072–1073, 31 Cal.Rptr.3d 887 (2005) (applying *Mudd* to the change in statute of limitations at issue here).

■ Section 1983 claims are also subject to state tolling rules. *Id.* at 992. Relevant to the present action, the statute of limitations may be tolled for up to two years during the time a plaintiff is incarcerated. Cal Code Civ. P. 352.1(a).

Plaintiff complains of three actions taken by Governor Davis: 1) the first reversal of the decision to parole him, made on April 13, 1999 (FAC ¶ 30); 2) the second reversal of the decision to parole him, made on January 22, 2001 (FAC ¶ 33); and 3) the request by Governor Davis that the Parole Board review its decision and rescind Plaintiff's parole, made on March 20, 2002 (FAC ¶ 38).

■ The first reversal of the Parole Board's decision was made on April 13, 1999. It is not entirely clear from the FAC when Plaintiff knew or should have known of the injury caused by this action. It is likely that he learned of the reversal shortly after it was made. *See* Cal.Penal Code § 3041.2(b) (requiring the Governor to "send a written statement to the inmate specifying the reasons for" a decision to reverse the Parole Board's decision). Nevertheless, it is very clear that at the very latest, he should have known some time before he applied for parole again on October 2, 2000. Applying the tolling provision, the statute began running no later than the date of Plaintiff's release from prison custody in June 2002. Using the longer statute of limitations, the limitations period expired in June 2004 for any claim based on the first reversal. The present action was filed in April 2005.

Therefore, any claim based on the first reversal is time barred.

The claim based on the second reversal suffers from the same deficiency. The second reversal by the Governor was made in January 2001. Again, it is not entirely clear from the FAC when Plaintiff knew or should have known of the injury caused by this action, but it is likely that he learned of the decision shortly thereafter. Nevertheless, it is clear that at the very latest, he should have known of it by the date of his release from prison custody in June 2002. Applying the longer statute of limitations, the limitations period on any claim based on the second claim also expired in June 2004, well before the present action was filed. Therefore, any claim based on the second reversal is also time barred.

■ Plaintiff's argument that the Court should consider, in applying the statute of limitations, the date that he was released from parole in 2005 is unavailing. Certainly, had Plaintiff been released from prison custody at an earlier date, he would have been released from parole before 2005. Therefore, part of the damages he suffered could be said to include the curtailment of his liberty that is incident to his parolee status. However, the fact that harm may be ongoing does not affect the date upon which a claim accrues. For statute of limitations purposes, "the question is when the operative decision was made, not when the decision is carried out." *RK Ventures, Inc. v. City of Seattle,* 307 F.3d 1045, 1059 (2002). "[M]ere continuing impact from past violations is not actionable." *Grimes v. City and County of San Francisco,* 951 F.2d 236, 238–39 (9th Cir.1991) (internal quotation marks and citation omitted).

In *Knox v. Davis,* 260 F.3d 1009, 1013 (9th Cir.2001), the Ninth Circuit considered the accrual date of the civil rights claims of a criminal defense lawyer who

was denied access to her client by virtue of her exclusion from prison facilities by prison officials. The court rejected the argument that a new claim accrued each time she was denied access to an incarcerated client; instead, the court held that the lawyer's claim accrued when she received the letter notifying her of the revocation of her legal mail and visitation privileges. *Id.* The court reasoned that each subsequent denial of privileges was merely the continuing effect of the original suspension; therefore the statute of limitations on any § 1983 claim based on the denial of privileges began running upon her receipt of the letter. *Id.*

The *Knox* court stated that its holding was compelled by the United States Supreme Court case of *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). *Knox,* 260 F.3d at 1013. In *Ricks,* a college professor was denied tenure. *Ricks,* 449 U.S. at 252, 101 S.Ct. 498. Instead, pursuant to college policy, the professor was offered a one-year "terminal" contract; his employment was terminated (as expected) after the expiration of the contract. *Id.* at 253, 101 S.Ct. 498. The professor's subsequent race discrimination claim was barred on statute of limitations grounds because the claim accrued upon the denial of tenure because that event was understood to lead to a termination of employment. *Id.* at 257–58, 262, 101 S.Ct. 498 ("It appears that termination of employment at Delaware State is a delayed, but inevitable, consequence of the denial of tenure.")

Here, the same is true. Plaintiff's 2005 release from parole was a "delayed, but inevitable, consequence" of his delayed release from prison. Therefore, as in *Ricks,* the delayed release from parole does not affect the limitations period. Plaintiff's claims are time barred.

### III. Quasi–Judicial Immunity [3]

■ Governor Davis argues that he is entitled to quasi-judicial immunity.

■ This Court has already concluded that the Parole Board members were entitled to quasi-judicial immunity. *See* Court's February 9, 2006 Order. In reaching this conclusion, the Court noted that "[i]t is well settled that judges are entitled to absolute immunity for their judicial acts," and that this immunity is extended to other government officials when they make discretionary judgments that are "functionally comparable to those of judges." *Id.* at 3 (internal quotation marks and citations omitted). The Court discussed the Ninth Circuit case of *Sellars v. Procunier,* 641 F.2d 1295, 1303 (9th Cir.1981), which conferred quasi-judicial immunity on parole officials when they decide whether to grant, deny, or revoke parole because those decisions are functionally comparable to decisions made by judges. The Court then stated that the purpose of judicial immunity was "to enable judges to render impartial decisions, free from the fear of litigation," and noted that "[t]he same reasoning applies to a grant of quasi-judicial immunity." Court's February 9, 2006 Order at 4. The Court recognized that "[j]udicial immunity protects judges from liability for both erroneous findings of fact and erroneous conclusions of law" and that "quasi-judicial immunity completely shields covered

---

**3.** At oral argument in this matter, counsel for Governor Davis requested that the Court rule on his argument regarding quasi-judicial immunity. At set forth in this section, the Court has granted that request, and finds that Governor Davis is entitled to quasi-judicial immunity. Plaintiff requested an opportunity to respond to arguments in support of immunity. Because this issue was raised by the Governor in his Motion papers, Plaintiff was given the opportunity to address the issue of immunity, and he did in fact address the issue at length. *See* Opp. at 2–5. Accordingly, the Court denies Plaintiff's request.

officials when they perform the functions which give rise to the need for absolute protection, even when the officials make egregious mistakes in carrying out these duties." *Id.* (internal quotation marks and citation omitted). Consistent with these principles, the Court then concluded that although the decision to refer the granting of Plaintiff's parole to the Governor was found to be erroneous, it was nevertheless protected by quasi-judicial immunity. *Id.*

In this action, Plaintiff complains of actions taken by the Governor pursuant to Cal.Penal Code §§ 3041.2 and 3041.1. Section 3041.2 provides:

(a) During the 30 days following the granting, denial, revocation, or suspension by a parole authority of the parole of a person sentenced to an indeterminate prison term based upon a conviction of murder, the Governor, when reviewing the authority's decision pursuant to subdivision (b) of Section 8 of Article V of the Constitution,[4] shall review materials provided by the parole authority.

(b) If the Governor decides to reverse or modify a parole decision of a parole authority pursuant to subdivision (b) of Section 8 of Article V of the Constitution, he or she shall send a written statement to the inmate specifying the reasons for his or her decision.

Cal.Penal Code § 3041.2. The duties imposed upon a Governor when he or she chooses to review a decision of the Parole Board are clearly duties that are "function-ally comparable to those of judges." For instance, once a governor exercises the discretion under these provisions to review the Parole Board's decision, he or she is limited in the materials that may be reviewed and the factors that may be considered. He or she is required to provide a written statement regarding the reasons for the decision. These are classic judicial functions: Courts routinely conduct reviews of evidence, consider articulated "factors" in analyzing the evidence, come to conclusions based on the evidence, and prepare written statements that outline their review, analysis, and conclusion. Moreover, here, the Governor conducted a review of a decision by a Board whose members are themselves protected by quasi-judicial immunity. In that instance, he acted much like an appellate court in reviewing a lower court's decision. Therefore, a holding that the Governor's actions are protected by quasi-judicial immunity is a logical extension of the holding that the Parole Board is so protected. This holding is rendered all the more sound when one considers that the Governor's decision is itself subject to further judicial review. *See, e.g., In re Rosenkrantz,* 29 Cal.4th 616, 658–67, 128 Cal.Rptr.2d 104, 59 P.3d 174 (2002) ("[W]e conclude that the courts properly can review a Governor's decisions whether to affirm, modify, or reverse parole decisions by the Board to determine whether they comply with due process of law, and that such review properly can include a determination of whether the factual basis of such a decision is sup-

---

**4.** The referenced provision of the California Constitution states:

No decision of the parole authority of this state with respect to the granting, denial, revocation, or suspension of parole of a person sentenced to an indeterminate term upon conviction of murder shall become effective for a period of 30 days, during which the Governor may review the decision subject to procedures provided by stat-

ute. The Governor may only affirm, modify, or reverse the decision of the parole authority on the basis of the same factors which the parole authority is required to consider. The Governor shall report to the Legislature each parole decision affirmed, modified, or reversed, stating the pertinent facts and reasons for the action.

Cal. Const. Art. 5, § 8(b).

ported by some evidence in the record that was before the Board.") Therefore, the Governor's actions pursuant to § 3041.2 are protected by quasi-judicial immunity.

The Governor's exercise of discretion pursuant to Section 3041.1 is also protected by quasi-judicial immunity. Section 3041.1 provides:

> Up to 90 days prior to a scheduled release date, the Governor may request review of any decision by a parole authority concerning the grant or denial of parole to any inmate in a state prison. The Governor shall state the reason or reasons for the request, and whether the request is based on a public safety concern, a concern that the gravity of current or past convicted offenses may have been given inadequate consideration, or on other factors.

Cal.Penal Code § 3041.1. Under this statute, when a governor exercises his or her discretion to request a review of a Parole Board decision, he or she also is required to make an assessment that is "functionally comparable" to those made by judges. He or she must "state the ... reasons for the request," including specifically "whether the request is based on a public safety concern," and whether he or she believes that "the gravity of current or past convicted offenses may have been given inadequate consideration." This qualitative assessment of the Parole Board's decision is similar to those made by an appellate court. Admittedly, a governor's power under § 3041.1 is not as great as that conferred by § 3041.2, which permits a governor to affirm, modify, or reverse the Parole Board's decision; nevertheless, the request contemplated by § 3041.1 is an action that is strikingly similar to a remand (with instructions) of an action to the lower court. Accordingly, the Governor's actions pursuant to § 3041.1 is protected by quasi-judicial immunity.

 Plaintiff argues that because the Governor acted beyond his authority (i.e., he acted "ultra vires"), he is not entitled to immunity. Plaintiff cites no authority for his argument, but his elaboration makes clear that his argument is based on the "ultra vires" doctrine as it has developed in the context of sovereign immunity. *See* Opposition at 4 ("Defendant Davis' conduct was not authorized by the State of California and therefore was ultra-vires. Actions of state officials are not attributable to the State—are ultra-vires—in two different types of situations: (1) when the official is engaged in conduct that the sovereign has not authorized, and (2) when he has engaged in conduct that the sovereign has forbidden."). There is such an exception to the doctrine of sovereign immunity. *See De Lao v. Califano,* 560 F.2d 1384, 1391 (9th Cir.1977) (noting that ultra vires actions by a government official may create an exception to the doctrine of sovereign immunity). Here, however, the Governor is not seeking the protection of sovereign immunity; rather, he seeks the protection of quasi-judicial immunity.

Plaintiff's argument is that the Governor was clearly not authorized under § 3041.2 to review the decision granting his parole and that therefore the Governor engaged in acts that were outside of the authority granted to him—i.e., he acted ultra vires. It is true that because Plaintiff was convicted not of murder but of conspiracy to commit murder, the Governor was not authorized to review the decision granting Plaintiff's parole. However, in deciding to conduct the review, the Governor made a mistake of law. As noted previously, judicial immunity protects against mistakes of law so that "judges [are] at liberty to exercise their functions with independence and without fear of consequences" *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Accordingly, in light of the purpose underlying judicial immuni-

ty, Plaintiff's argument, based on the doctrine of sovereign immunity, is unpersuasive.

Accordingly, Plaintiff's claims against the Governor are barred by quasi-judicial immunity.

### IV. Remaining Defendants

#### A. Remaining Served Defendant

One Defendant who has been served has neither answered nor moved to dismiss. Carol Bentley, a Parole Board member, was served on August 4, 2005 *see* Proof of Service, docket # 5). She, like the other Parole Board members, is represented by the California Attorney General's Office. No allegations against her distinguish her from her colleagues with respect to the claims asserted in this action. Therefore, it appears to the Court that the Attorney General's failure to include her as a moving Defendant in the previous Motion to Dismiss (docket # 15) was an oversight.

She, like her colleagues, is entitled to quasi-judicial immunity as to Plaintiff's claims. The previous Motion to Dismiss argued that such immunity was proper, and Plaintiff was provided with the opportunity to respond to that argument. For that reason, the Court dismisses with prejudice all claims against Defendant Bentley. *See Lee v. City of Los Angeles,* 250 F.3d 668, 683 n. 7 (9th Cir.2001) (noting that a court may dismiss *sua sponte* for failure to state a claim if the plaintiff is given the opportunity to oppose the grounds for dismissal).

#### B. Remaining Unserved Defendant

The sole remaining Defendant in this action, Richard Patterson, has not been served. The time for serving him has expired. *See* Fed.R.Civ.P. 4(m). Plaintiff was advised in the Court's tentative Order that he would be required to show cause at oral argument why the claims against Patterson should not be dismissed for failure to serve him. Despite lengthy oral argu-

ment, Plaintiff did not offer any argument against dismissal of the claims asserted against Patterson. For that reason, the Court dismisses all claims against Patterson.

### V. Conclusion

For the reasons stated herein, the Court grants Defendant Gray Davis's Motion to Dismiss (docket # 38). All claims asserted against the former Governor are dismissed with prejudice. Additionally, all claims asserted against Defendant Bentley are dismissed with prejudice. Finally, all claims against Patterson are dismissed without prejudice.