Morcos S. **AZER**; **Doctor's Medical Laboratory, Inc.,** Plaintiffs–Appellants,

v.

Kathleen **CONNELL**; **John Chen**; **Steven Fujimori**; **Joseph P. Munso**; **Al Schaden,** Defendants–Appellees.

No. 01–55359.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 7, 2002.

Filed Sept. 26, 2002.

Patric Hooper, Hooper, Lundy & Bookman, Los Angeles, CA, for the appellants.

Kenneth G. Lake, Deputy Attorney General, Los Angeles, CA, for the appellees.

Before: WARDLAW, W. FLETCHER, Circuit Judges, and WHYTE,* District Judge.

WILLIAM A. FLETCHER, Circuit Judge.

Plaintiffs Morcos S. Azer and his now-moribund company, Doctor's Medical Laboratory, Inc. ("DML"), bring this 42 U.S.C. § 1983 action against defendants Kathleen Connell, California's elected State Controller; John Chen, Chief of the Audits Division of the California Controller's office at all times relevant to this appeal; and Ste-

---

* The Honorable Ronald M. Whyte, United States District Judge for the Northern District of California, sitting by designation.

ven Fujimori, an audit manager in the Controller's office at all times relevant to this appeal (collectively, the "Controller Defendants"). The suit also names as defendants Joseph Munso and Al Schaden, who were employed by the California Department of Health Services ("DHS") at all times relevant to this appeal (collectively, the "DHS Defendants"). Munso was the acting or actual Chief Deputy Director of DHS. Schaden was the Chief of the Case Development Section of the Medical Review Branch of the Audits and Investigation Division of DHS. The plaintiffs allege that each defendant, in his or her individual capacity, wrongfully withheld nearly $3 million in payments to DML as part of a Medi–Cal fraud investigation. The district court granted defendants' motion to dismiss the suit as untimely. We reverse and remand.

## I. Background

Azer was the sole shareholder and president of DML. Beginning in 1993, DML was licensed to provide clinical laboratory services to California's Medi–Cal program. Medi–Cal is California's health program for the indigent, and is operated under the federal Medicaid Act. More than 90% of DML's revenues came from Medi–Cal. Because two aspects of the Medicaid/Medi–Cal regulatory framework are pertinent to this appeal, we outline them briefly.

## A. Regulatory Framework

■ In exchange for receiving federal Medicaid funds, states implementing state-level programs such as Medi–Cal must comply with the federal statutory and regulatory requirements of Medicaid. *See* 42 U.S.C. § 1396a; *Wilder v. Va. Hosp. Ass'n,* 496 U.S. 498, 502, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990); *San Lazaro Ass'n, Inc. v. Connell,* 286 F.3d 1088,

1092–94 (9th Cir.2002). Regulations implementing the Medicaid Act are promulgated by the federal Department of Health and Human Services ("HHS"). One statutory provision requires a state participating in Medicaid to designate a "single state agency" to administer its Medicaid plan. 42 U.S.C. § 1396a(a)(5). DHS is the single state agency designated to administer Medi–Cal. The designated state agency may not delegate to any other agency the authority to exercise discretion in administering the program. *See* 42 C.F.R. § 431.10(e). However, the single state agency may subcontract certain functions that do not involve a delegation of discretionary authority. *See* 42 C.F.R. §§ 434.4, .6, .10. For example, DHS contracts with a private entity, Electronic Data Systems ("EDS"), to review and process provider payments for services to Medi–Cal patients. *See San Lazaro,* 286 F.3d at 1093.

Another provision of federal law requires states to establish procedures to investigate Medicaid fraud and abuse, while also safeguarding the rights of health-care providers. *See* 42 U.S.C. §§ 1396a(a)(3), (a)(42); 42 C.F.R. §§ 447.200, 447.202, 455.12 .23. If an audit reveals overpayment to a provider, the provider is entitled to an administrative appeal of the audit findings. *See* Cal. Welf. & Inst.Code § 14171. Although DHS is permitted by federal regulation to withhold payments to a provider in cases of fraud or willful misrepresentation, such withholdings must be temporary. *See* 42 C.F.R. § 455.23(c). DHS may not recoup alleged overpayments to a provider until the administrative appeals process is complete. *See* Cal.Code Regs. tit. 22, §§ 51017, 51047(a).

## B. Audit Agreement between DHS and the Controller

In June 1997, DHS and the State Controller entered into an "interagency agree-

ment" under which the Controller would perform audits and identify overpayments to providers. The agreement provided that although the Controller would perform audits, DHS would retain final authority to review all reports of overpayments identified by the Controller. *See RCJ Med. Servs., Inc. v. Bonta,* 91 Cal. App.4th 986, 999 n. 4, 111 Cal.Rptr.2d 223 (2001) (describing the 1997 agreement). In September 1997, pursuant to the interagency agreement with DHS, the State Controller Defendants ordered two financial auditors employed exclusively by the State Controller's office to conduct an unannounced, warrantless search of DML's business premises and to seize various documents and records. DML alleges that there were subsequent warrantless searches as well, and that the funds seized had been previously approved for payment. The defendants ultimately seized and withheld approximately $2,833,006.40 in Medi–Cal payments from DML. As a result of the seizures, DML was forced to close its laboratory, effective November 25, 1997.

### C. DML's State Court Suits

In November 1997, DML filed suit in California state court seeking a declaration that the Controller had acted unlawfully in seizing and withholding the funds, and an order that the funds be released. The suit named as defendant only California State Controller Connell, in her official capacity. The trial court ruled in favor of DML, holding that although the Controller had the authority to audit DML, she had acted improperly in impounding the funds. The California Court of Appeal affirmed the trial court's holding that the Controller had improperly impounded the funds, and affirmed its order requiring the Controller to refund the payments seized from DML. *See Doctor's Med. Lab., Inc. v. Connell,* 69 Cal.App.4th 891, 898, 81 Cal.Rptr.2d 829

(1999). The appellate court reversed the trial court's holding that the Controller may conduct Medi–Cal audits. *See id.* at 897–98, 81 Cal.Rptr.2d 829.

Although the California Court of Appeal ordered the Controller to release all funds that EDS had approved for payment to DML "without prejudice to subsequent audits and claims for overpayment by DHS," *id.* at 898, 81 Cal.Rptr.2d 829, the Controller refused to release any funds. Instead, she petitioned for rehearing, and then appealed to the California Supreme Court. That court denied review on May 26, 1999.

Two days later, DHS defendant Munso sent a memorandum to the Controller's office stating:

> We understand that the California Supreme Court has refused to overturn the decision of the Court of Appeal. . . . We further understand that this means that your office is now compelled to release Medi–Cal payments previously withheld from [DML]. Based on information available, we have determined that we have reliable evidence of fraud or willful misrepresentation by [DML]. Therefore, we are requesting that you withhold any Medi–Cal payments based on adjudicated claims . . . pursuant to our authority in 42 CFR section 455.23[the "temporary withholding" provision].

After Munso's memorandum was sent, DHS defendant Schaden informed plaintiffs that DHS was "temporarily withholding" all of the Medi–Cal payments in question because it had determined that there was fraud or misrepresentation by DML. In response to Munso's memorandum, the Controller's office delivered to DHS a warrant payable to DML for $2,218,274. DHS, in turn, refused to release the funds to DML.

DML returned to state court seeking to compel the Controller to comply with the

order that it refund the money to DML. Both the trial court and the Court of Appeal rejected the Controller's argument that it could not refund the payments to DML because it had turned the warrant over to DHS. *See Doctor's Med. Lab., Inc. v. Connell,* No. B134090 (Cal.App.Ct. June 28, 2000) (unpub.order). The Court of Appeal concluded that because the payments had been withheld for more than two and a half years, the withholding could not be termed "temporary" pursuant to the relevant regulation. *See* 42 C.F.R. § 455.23(c).

The Controller finally released some of the money owed to DML in June 2000. The balance of the money was refunded in November 2000.

### D. The Current Suit

■ Azer and DML filed this complaint on October 16, 2000, seeking relief under 42 U.S.C. § 1983. Suits under 42 U.S.C. § 1983 by corporate plaintiffs are permissible. *See Cal. Diversified Promotions, Inc. v. Musick,* 505 F.2d 278, 283 (9th Cir.1974). To establish a prima facie case under 42 U.S.C. § 1983, a plaintiff must demonstrate that (1) the action complained of occurred "under color of law," and (2) the action resulted in a deprivation of a constitutional right or a federal statutory right. *McDade v. West,* 223 F.3d 1135, 1139 (9th Cir.2000) (citing *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 330–31, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)).

The four counts of the complaint allege: (1) the Controller's warrantless search of DML's premises and her seizure of papers and payments constitute a violation of plaintiffs' Fourth Amendment rights; (2) the initial seizure of Medi–Cal funds approved for payment to DML and the con-

tinuing withholding of those funds constituted a violation of plaintiffs' due process rights under the Fifth and Fourteenth Amendments; (3) defendants deprived plaintiffs of their right under 42 U.S.C. § 1396a(a)(5) and 42 C.F.R. § 431.10(3) to have a single state agency administer the Medi–Cal program; and (4) defendants deprived plaintiffs of their rights under 42 C.F.R. §§ 455.13 and 455.23 to due process of law and to have funds withheld only temporarily. Plaintiffs seek $10 million in compensatory damages and $75 million in punitive damages.

The district court initially held that plaintiffs had made out a prima facie case as to Counts 1 and 2 of its complaint, rejecting the defendants' argument that Medicaid providers have no cognizable property right in Medicaid funds during the pendency of a fraud investigation. It did not address Counts 3 and 4. However, the district court ultimately granted the defendants' motion to dismiss, holding that all of plaintiffs' claims were barred by the one-year statute of limitations. The court held that plaintiffs' § 1983 claims arose out of the discrete act of seizing the disputed funds in 1997, rejecting the plaintiffs' attempt to characterize the seizure and retention of the funds as a continuing violation. The court also rejected DML's argument that its earlier pursuit of a state court remedy entitled DML to equitable tolling of the statute of limitations.

### II. Statute of Limitations

■ Section 1983 actions are governed by the state statute of limitations for personal injury actions. *See Wilson v. Garcia,* 471 U.S. 261, 276, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Therefore, DML's § 1983 claim is subject to California's one-year statute. *See Daviton v. Columbia/HCA Healthcare Corp.,* 241 F.3d 1131, 1135 (9th Cir.2001) (en banc) ("California's

one-year statute for personal injury claims, Code of Civil Procedure section 340(3), applies to claims under 42 U.S.C. section 1983."). Although state law determines the length of the limitations period, "federal law determines when a civil rights claim accrues." *Morales v. City of Los Angeles,* 214 F.3d 1151, 1153–54 (9th Cir.2000). Under federal law, "a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.* at 1154.

■ We review the district court's dismissal of DML's § 1983 claim on statute of limitations grounds *de novo. See Daviton,* 241 F.3d at 1135; *see also Santa Maria v. Pac. Bell,* 202 F.3d 1170, 1176 (9th Cir. 2000) ("[A] district court's decision whether a statute of limitations has been equitably tolled is generally reviewed for an abuse of discretion, unless the facts are undisputed, in which event the legal question is reviewed de novo."). For the reasons that follow, we hold that DML, but not Azer, is entitled to equitable tolling. We do not reach the question of continuing violation.

■ The purpose of a statute of limitation is "to prevent assertion of stale claims against a defendant." *Daviton,* 241 F.3d at 1136. Where the danger of prejudice to the defendant is absent, and the interests of justice so require, equitable tolling of the limitations period may be appropriate. *See Stoll v. Runyon,* 165 F.3d 1238, 1242 (9th Cir.1999). Because we borrow California's statute of limitations, "we also apply California's tolling rules that are not inconsistent with federal law." *Morales,* 214 F.3d at 1151; *see also TwoRivers v. Lewis,* 174 F.3d 987, 992 (9th Cir.1998). Under California law, tolling is appropriate in a later suit when an earlier suit was filed and where the record shows: "(1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to the

defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim." *Daviton,* 241 F.3d at 1137–38 (citing *Collier v. City of Pasadena,* 142 Cal.App.3d 917, 924, 191 Cal.Rptr. 681 (1983)); *see also Addison v. State,* 21 Cal.3d 313, 319, 146 Cal.Rptr. 224, 578 P.2d 941 (1978).

## A. Notice

■ At the outset, we address the defendants' argument that because Azer was not a plaintiff in the first suit, the defendants were not on notice that they might be subject to a civil rights suit by Azer as well as by DML. Azer counters that because he was the president and sole shareholder of DML, his interests are sufficiently intertwined with DML's that the defendants should have been on notice of his claims. Although we can find no California case law directly on point, we agree with the defendants. The defendants may well have been aware of Azer's status as the president and sole shareholder of DML, but his interest is not identical to that of his corporation. By choosing to do business in the corporate form, Azer availed himself of the protections that form affords. He cannot now pierce the corporate veil from the inside and claim that any assertion of rights by DML put the defendants on notice of a suit asserting his personal rights. Further, the fact that the defendants were aware of Azer's relationship to DML does not mean that they were also aware that he was taking personal actions, such as going into debt, on behalf of DML. We therefore hold that the statute of limitations was not equitably tolled as to Azer.

■ However, we hold that by timely filing an action in state court to challenge the withholding, and by diligently pursuing that action, plaintiff DML provided all de-

fendants adequate notice. DML first filed suit against the Controller, in her official capacity, in 1997. The defendants argue that the 1997 suit cannot serve as "timely notice" to them, because an official capacity suit is simply a suit against the state in disguise. Thus, argue the defendants, they were not on notice that they might, as individuals, be subject to suit for the seizure and withholding of DML's funds. We disagree. The seizure and withholding was effected by individuals within the Office of the Controller, and DML's suit challenged these actions as illegal. Thus, the suit should have served to notify those individuals responsible for the withholding that they might incur liability for their actions. The state trial court ordered the Controller to release the withheld funds on January 12, 1998—just four months after the initial audit and withholding, and just two months after DML filed suit. Rather than complying with the judgment and returning the funds, however, the Controller appealed the judgment and continued to withhold the funds. The Controller did not finally release any of the funds it had first been ordered to release in January 1998 until two and a half years later, despite the fact that the Controller had never prevailed in any court that considered the issue. This protracted activity was sufficient to put the individual defendants on continuing notice of the possibility of suit.

As to the DHS Defendants, DML argues that they cannot credibly claim that they were unaware of suits brought against the Controller pursuant to audits conducted under the agreement between DHS and the Controller. Further, DML alleges that the DHS Defendants cooperated with the Controller Defendants in wrongfully withholding funds from DML long after it was apparent that it was illegal to do so. For example, two days after the California Supreme Court denied review, DHS defendant Munso alleged for the first time that DHS had "reliable evidence of fraud or misrepresentation" by DML, and, thereafter, DHS defendant Schaden informed DML that its Medi–Cal payments were being "temporarily withheld." DHS requested that, based on the alleged evidence, the Controller withhold payments pursuant to the "temporary withholding" provision of 42 CFR § 455.23. As the California Court of Appeal commented, in its second decision in this case, "[t]he timing of this memorandum is noteworthy." *Doctor's Med. Lab.*, No. B134090 at *7. Thus, DML has alleged that DHS, and Munso and Schaden in particular, were not only aware of the state court judgment ordering return of the funds, but actively participated in effecting the continued illegal withholding.

DML also notes that although it sued only defendant Kathleen Connell in state court, it simultaneously pursued administrative remedies against her before the DHS. *See* Cal. Welf. & Inst.Code § 14171 (requiring DHS to create administrative appeal process for provider audits). However, DML does not allege any improprieties in the administrative proceeding, and we do not rely on the existence of this proceeding to justify tolling against the DHS Defendants. Although it is a somewhat close question, we hold that the degree of cooperation between the Controller and the DHS Defendants, as well as the state court suits against the Controller Defendants based on this conduct, constitutes sufficient notice to the DHS Defendants as well.

### B. Prejudice

In *Daviton*, we emphasized that the second requirement of the equitable tolling analysis, prejudice to the defendant, should be construed liberally in favor of the plaintiff. *See* 241 F.3d at 1137, 1140. *See also Cervantes v. City of San*

*Diego,* 5 F.3d 1273, 1275 (9th Cir.1993) ("California courts have liberally applied tolling rules or their functional equivalents to situations in which the plaintiff has satisfied the notification purpose of a limitations statute." (citation omitted)). Here, the defendants cannot claim prejudice from defending DML's § 1983 suits, because the defendants were on notice of the possibility of this suit, at the very least, from the time the first state court suit was filed. Further, they cannot plausibly claim prejudice in the gathering or preservation of evidence because much of the evidence relevant to DML's present suit is the same as the evidence presented in the state suits. To the extent there is additional evidence relevant to the present suit, it is largely evidence of what the defendants did in the course of defending the state suits and then evading the orders of the state court. We therefore hold that there was no prejudice.

## C. Reasonable and Good Faith Conduct

 Finally, DML satisfies the third requirement, in that its conduct has been reasonable and in good faith. DML diligently pursued both administrative and state court remedies, promptly instituting actions to preserve its rights. DML's goal in its state court and administrative proceedings was simply the return of its illegally withheld funds. Indeed, DML prevailed under state law, and so had reason to believe, and should not be penalized for assuming, that the state court defendants would comply with orders of the state court. Only when they repeatedly refused to comply did DML finally feel compelled to bring the current civil rights action. Administrative proceedings were not concluded until May 7, 2000, and judicial proceedings were not concluded until June 28,

2000. We hold that DML acted reasonably and in good faith in waiting until October, 2000 to file its complaint.

## III. Other Defenses

Defendants seek to defend the result reached by the district court on the alternate grounds of claim preclusion and official immunity.[1] The district court did not reach either claim preclusion or official immunity. Although the parties have briefed each of these two grounds on appeal, we decline to reach them, believing it more appropriate for the district court to decide them in the first instance.

## Conclusion

We affirm the district court's dismissal of Azer's suit as untimely, reverse its dismissal of DML's suit as untimely, and remand for further proceedings.

AFFIRMED in part, REVERSED in part, and REMANDED.

**UNITED STATES of America; United States Department of the Interior; Gale A. Norton; * Michael J. Spears, Defendants–Appellees,**

---

1. Defendants have not asserted a defense based on Eleventh Amendment immunity.

