# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RICHARD A. CANATELLA,
   *Plaintiff-Appellant,*

v.

JOHN K. VAN DE KAMP; MARIE M.
MOFFAT; JAY GOLDMAN; NANCY
MCCARTHY; CALIFORNIA BAR
JOURNAL; ROBERT HAWLEY;
ZANASSI; MARTHA DAETWYLER,
   *Defendants-Appellees.*

No. 06-15186

D.C. No.
CV-05-02415-BZ

OPINION

Appeal from the United States District Court
for the Northern District of California
Bernard Zimmerman, Magistrate, Presiding

Argued and Submitted
October 16, 2006—San Francisco, California

Filed May 3, 2007

Before: J. Clifford Wallace and Jay S. Bybee, Circuit Judges,
and Dean D. Pregerson,* District Judge.

Opinion by Judge Bybee

---

*The Honorable Dean D. Pregerson, United States District Judge for the
Central District of California, sitting by designation.

## COUNSEL

Richard A. Canatella, Esq., and Ronald Toran, Esq., Cotter & Del Carlo, San Francisco, California, for the plaintiff-appellant.

R. Scott Erlewine, Esq., Phillips, Erlewine, & Given LLP, San Francisco, California, for defendants-appellees.

## OPINION

BYBEE, Circuit Judge:

Appellant Richard Canatella ("Canatella") appeals the United States District Court's order dismissing his civil rights suit against the State Bar of California ("California Bar"), several officers of the California Bar (collectively, with the California Bar, "Appellees"), and attorney Martha Daetwyler ("Daetwyler"). The district court disposed of Canatella's civil rights claims against Appellees on statute of limitations grounds and Canatella's claims against Daetwyler on state action and privilege grounds. We now deal with Canatella's claims against Appellees[1] and affirm the district court's dismissal order.

I

Canatella is a California attorney, who has been repeatedly sanctioned by both state and federal courts.[2] At some point after 1992, the California Bar initiated disciplinary proceedings against Canatella in connection with those sanctions. Canatella challenged those proceedings in federal court, but his suit was dismissed on abstention grounds. After that dismissal, Canatella and the California Bar reached an agreement concerning his professional conduct, and as part of that agree-

---

[1]We deal with Canatella's claims against Daetwyler in an unpublished memorandum disposition.

[2]Though there is some dispute over how many times Canatella has been sanctioned, Canatella's second amended complaint concedes that he has been "investigated for forty-seven (47) purported sanction orders over a nine year period" and has been sanctioned at least "twenty-six (26) separate times between 1989 and 1998, by federal and state courts."

ment, Canatella consented to a thirty-day suspension of his license and a probationary period of eighteen-months. When the California Supreme Court approved that agreement in August 1999, the sanction and suspension became part of Canatella's public disciplinary record. *See* CAL. BUS. & PROF. CODE § 6086.1(a)(1) (providing that "records of original disciplinary proceedings in the State Bar Court shall be public").

Thereafter, in February 2000, pursuant to California law, the *California Bar Journal* published an identical summary of Canatella's disciplinary sanction in both its paper and online editions.[3] That summary, which Canatella concedes he read in the print version of the *California Bar Journal*, read as follows:

> RICHARD A. CANATELLA [#53264], 61, of San Francisco was suspended for 18 months, stayed, placed on 18 months of probation with a 30-day actual suspension, and was ordered to take the MPRE within one year. The order took effect Sept. 17, 1999.
>
> Canatella stipulated to filing numerous frivolous actions in courts in San Mateo, San Francisco, and Santa Clara county courts, as well as in the California Court of Appeal and federal district and appeals courts.
>
> Six were civil matters he filed relating to a criminal case in which he represented a babysitter who was convicted of second degree murder and felony child abuse. The civil cases, filed on behalf of the babysitter and her parents, who owned the house where she lived, included legal malpractice, insurance bad faith, and allegations that various defendants con-

[3]The California Bar has been publishing the *California Bar Journal* in both paper and electronic form since January 1996.

> spired to deprive his clients of their constitutional rights.
>
> Canatella's involvement in nine other matters also was the subject of discipline.
>
> Sanctions were ordered against him or his clients 37 times. Courts repeatedly found him responsible for frivolous, meritless and vexatious actions. Sanctions totaled more than $18,000 in one matter, and the opposing parties were granted all fees and costs in another.
>
> In one case, a federal judge said, "This complaint is a paradigm for 'frivolous.' " Wrote another federal jurist: "Plaintiff's repeated attempt to challenge the sanctions and judgments . . . in the face of clear authority that his claim is frivolous evidences his bad faith and wrongful purpose."
>
> In mitigation, Canatella has no record of discipline since beginning to practice law in 1972 and he demonstrated his good character by presenting testimonials from eight people, including four attorneys and three judges. He also presented a lengthy list of his professional accomplishments.

In addition to containing an electronic version of the *California Bar Journal*, the California Bar's website also contains a member search function that allows the public to search for information on California attorneys. Before 2003, if a member had a disciplinary record, a member search would only reveal the existence—but not the content—of that record. At some point after March 2003, however, that same search would reveal both the existence of a disciplinary record and the *California Bar Journal*'s summary of that record.[4] Consequently,

---

[4]The California Bar's website includes summaries of disciplinary proceedings that occurred after 1996.

at some point after August 2003,[5] the same disciplinary summary that appeared in the online *California Bar Journal* also appeared in response to a member search for Canatella's name.

On July 27, 2004, Daetwyler—who represented a client adverse to Canatella's in a state probate proceeding—cited the disciplinary summary that appears on Canatella's member search page in support of a motion to recover court costs. Though the probate court denied that motion, Canatella filed this suit pursuant to 42 U.S.C. § 1983, in July 2005, claiming that when Daetwyler cited that record she and Appellees violated his First, Fourth, and Fourteenth Amendment rights.[6] As part of his prayer for relief, Canatella sought both damages and "[d]eclaratory or injunctive relief enjoining the [Appellees] from republishing the offending summary on the [Cali-

---

[5]The California Bar began including disciplinary summaries on member search pages in March 2003. Nevertheless, an uncontradicted affidavit from an employee of Canatella's firm—the truth of which we assume for purposes of this appeal—states that the employee could not locate the summary when he ran a member search for Canatella's name between October 2002 and August 2003. The Appellees also concede that "[they] do not know the specific date" that Canatella's summary first appeared in response to a member search.

[6]Canatella's second amended complaint makes five claims. First, Canatella contends that a summary of his disciplinary record that appears on the California Bar's website violates his "constitutional right to privacy as a licensed attorney in good standing[ ] and infringes his right to confidentiality and autonomy." Next, Canatella contends that by making his disciplinary summary available in response to a member search without giving him a chance to review that summary, Appellees violated his procedural due process rights. Third, Canatella contends that the posting constitutes a "prior restraint prohibited by the First Amendment." Fourth, Canatella maintains that the posting violates substantive due process because it was posted "pursuant to a conspiracy designed to destroy [his] reputation and ability to . . . mak[e] a living and . . . continu[e to] . . . practice . . . law." And finally, Canatella maintains that the posting violates the Equal Protection Clause because the California Bar only posts the records of disciplinary proceedings occurring after 1996 on its website.

fornia] Bar['s] internet web site [sic], and directing [Appellees] to remove the offending summary."

Thereafter, Daetwyler and Appellees filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court granted Daetwyler's motion, and at the same time, when "it became apparent that" Canatella's claims against Appellees might be barred by the statute of limitations, the district court "as permitted by [Federal] Rule [of Civil Procedure] 12(b)(6) . . . gave the parties an opportunity to take limited discovery on [that] issue and to submit matters outside the pleadings to see if [that] potentially dispositive issue could be resolved at the outset." Based on information obtained in that manner, the district court granted Appellees' motion to dismiss. Canatella appeals that dismissal.

## II

## A

Canatella filed suit against Appellees pursuant to 42 U.S.C. § 1983, which provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Canatella challenges the district court's decision granting Appellees' motion to dismiss his claims pursuant to Rule 12(b). Because limited "matters outside the pleading[s] [were] presented to" the district court in ruling on that motion, Canatella's "motion [is] treated as one for summary judgment and

disposed of as provided in Rule 56." FED. R. CIV. P. 12(b). We review such rulings de novo. *Orr v. Bank of Am.*, 285 F.3d 764, 772 (9th Cir. 2002). In so doing, "[w]e must determine, viewing the evidence in the light most favorable to the nonmoving party and drawing all justifiable inferences in its favor, whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law." *Id.*; *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Furthermore, "[a] district court's decision as to whether a claim is barred by the statute of limitations is reviewed de novo," *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1175 (9th Cir. 2000), as is the question of when "the statute of limitations begins to run," *Orr*, 285 F.3d at 780. Applying that standard, we affirm the district court's decision because under California law, the statute of limitations ran on Canatella's claims before he filed his complaint.[7]

**[1]** "For actions under 42 U.S.C. § 1983," like Canatella's, "courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law." *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004), *cert. denied*, 126 S. Ct. 351 (2005). Thus, "California['s] statute of limitations for assault, battery, and other personal injury claims" applies to Canatella's § 1983 claims unless it is inconsistent with federal law. *Id.* The current version of that statute, which became effective on January 1, 2003, provides that personal injury actions must be brought within two years after the cause of action arose. *See Maldonado v. Harris*, 370 F.3d 945, 954-55 (9th Cir. 2004); *see also* CAL. CIV. PROC. CODE § 335.1. Because that statute does not apply retroactively, any cause of action that was more than one-year old as of January 1, 2003 would be barred under the previous one-year statute of limita-

---

[7]Because the statute of limitations issue is dispositive, we assume—for the purposes of this appeal—that Canatella has otherwise stated a valid § 1983 claim.

tions. *Jones*, 393 F.3d at 927 & n.4; *see also Maldonado*, 370 F.3d at 954-55.

**[2]** The parties dispute when Canatella's claims arose, and that dispute is relevant to determining whether California's previous one-year statute of limitations or the newly enacted two-year limitation period applies to Canatella's claim. Canatella contends that his claims did not arise until July 27, 2004, when Daetwyler cited his disciplinary summary. If Canatella is correct, the new two-year statute of limitations applies and Canatella's July 15, 2005 complaint would have been timely. By contrast, Appellees contend that Canatella's claims arose when the disputed summary first appeared on the California Bar's website in the electronic version of the California Bar Journal in February 2000. To support that argument, Appellees argue that the single publication rule, as codified in California at Civil Code § 3425.3, applies to Canatella's claims, and under that "rule, with respect to the statute of limitations, publication generally is said to occur on the first general distribution of the publication to the public," meaning that a "cause of action accrues and the period of limitations commences, *regardless* of when the plaintiff secured a copy or became aware of the publication." *Shively v. Bozanich*, 80 P.3d 676, 684 (Cal. 2003) (internal quotation marks omitted); *see also* RESTATEMENT (SECOND) OF TORTS § 577A(4) (1977) ("As to any single publication, (a) only one action for damages can be maintained; (b) all damages suffered in all jurisdictions can be recovered in the one action; and (c) a judgment for or against the plaintiff upon the merits of any action for damages bars any other action for damages between the same parties in all jurisdictions."). If Appellees are correct, the old one-year limitations period bars Canatella's claims, as his complaint must have been filed no later than February 2001. Relying on the single publication rule's logic, the district court held that Canatella's claim arose in February 2000 when the summary first appeared in the online version of the *California Bar Journal*.

**[3]** Because federal—not state—"law determines when a civil rights claim accrues," *Maldonado*, 370 F.3d at 955, California's single publication rule does not apply to Canatella's claims by its own force. Instead, "[u]nder federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999). In applying that principle, however, we have employed the single publication rule's logic to hold that once that standard is met, a single publication gives rise to only one cause of action. In *Oja v. United States Army Corps of Eng'rs*, 440 F.3d 1122, 1128, 1130-33 (9th Cir. 2006), for instance, we applied the single publication rule to a plaintiff's claim that the Corps of Engineers had violated the Privacy Act by posting the plaintiff's employment information on the internet. *Oja* held that the plaintiff's claims were barred by the Privacy Act's two-year statute of limitations since the first posting had occurred more than two years before the plaintiff brought suit and the plaintiff conceded that he had seen that posting more than two years before he filed suit. *Id.* at 1125, 1133. In so doing, we also held—as we do now—that the "[a]pplication of the single publication rule to Internet publication was not inconsistent with" federal law because that rule focuses a plaintiff's "claims against a defendant, thereby economizing judicial resources while preserving the plaintiff's ability to bring the claims." *Id.* at 1133. Other circuits have applied the single publication rule's logic in a similar manner. *See, e.g.*, *Pitts v. City of Kankakee*, 267 F.3d 592, 596-97 (7th Cir. 2001) (applying the single publication rule's logic to hold that a defamation claim arising under § 1983 was barred on statute of limitations grounds).

B

**[4]** Applying that principle, Canatella's civil rights claims are barred by California's one-year statute of limitations. Canatella saw the summary he now complains of in the print version of the *California Bar Journal* in February 2000, and that publication informed—or should have informed—him

that the same summary appeared on the internet website per the California Bar's previously stated policy to post an electronic version of the *California Bar Journal* on its website. Because, under the single publication rule, a single publication gives rise to only one cause of action, the statute of limitations period began to run on *all* of Canatella's claims in February 2000, and that period expired long before January 1, 2003. Thus, the district court properly concluded that Canatella's 2005 complaint was untimely.

Canatella attempts to avoid that conclusion on three grounds: First, he agues that by posting his disciplinary record at a second place on the California Bar's website, the California Bar republished his disciplinary record and restarted the statute of limitations period. Second, Canatella argues that Daetwyler's citation of his disciplinary record similarly constituted republication. And third, Canatella claims that every time a person searches for and locates the allegedly offensive summary a new cause of action accrues. All three contentions are without merit.

**[5]** Canatella's first argument—that placing his disciplinary summary on his member search page constituted a separate publication—is foreclosed by *Oja*. In that case, the plaintiff alleged, *inter alia*, that the Corps of Engineers had published private employment information in violation of federal law on two distinct websites thereby giving rise to two separate causes of action. *Oja*, 440 F.3d at 1133-34. We agreed, holding that if the Corps of Engineers had "published the same private information" that it had previously published "at a different URL address, then that disclosure [would] constitute[ ] a separate and distinct publication—one not foreclosed by the single publication rule—and the [Corps of Engineers] might be liable for a separate violation of the Privacy Act." *Id.* (footnote omitted). Whereas at first glance that language might appear to support Canatella's claim that his cause of action is not barred by the single publication rule since the first publi-

cation appeared at a slightly different URL address,[8] a footnote attached to the phrase "a different URL address" makes clear that *Oja* simply uses "URL" as a synonym for "website." *See id.* at 1134 n.16. Indeed, that footnote reveals that the *Oja* plaintiff did not even "provide the [second] website's URL listing in his Second Amended Complaint" and simply alleged that a second publication had occurred on "a second site, distinct from the [first]." *Id.*; *accord id.* (noting that the plaintiff had alleged that the second publication had occurred on a "*different* [Corps of Engineers] website" (emphasis added)). Accordingly, we "treat[ed] the . . . second site as separate and distinct from the [first] site" and held—on that basis —that the plaintiff's claims based on the second publication were not barred by the single publication rule. *Id.* at 1133-34 & n.16. Applying *Oja*'s mode of analysis, the California Bar's decision to add the allegedly offensive disciplinary summary to Canatella's member search page did not trigger a new cause of action since a verbatim copy of that summary had appeared on the *exact* same website since February 2000. Thus, contrary to Canatella's claims, the California Bar's posting of his disciplinary record in a different section of the same website did not give rise to a new cause of action under *Oja*, and accordingly, the statute of limitations period expired long before Canatella brought suit in 2005.

**[6]** Even aside from *Oja*, however, we would be compelled to reject Canatella's contention and hold that a website—not a particular URL—is the touchstone for the single publication rule analysis because of the very interests the single publication rule is designed to promote. For instance, as other courts have noted, the single publication rule exists to "reduce[ ] the

---

[8]The summary was first posted at http://www.calbar.ca.gov/calbar/2cbj/00feb/attdisc.htm and later posted at http://members.calbar.ca.gov/search/member_detail.aspx?X=53264. Though at oral argument, Appellees seemed to indicate that both addresses originally contained the identifier calbar.org instead of calbar.ca.gov, this difference is immaterial since users accessing calbar.org are automatically transferred to calbar.ca.gov. Moreover, Canatella does not rest his argument on this distinction.

possibility of hardship to plaintiffs [and defendants] by allowing the collection of all damages in one case commenced in a single jurisdiction" and prevent "a multiplicity of actions, leading to potential harassment and excessive liability, and draining of judicial resources." *Firth v. State*, 98 N.Y.2d 365, 369-70, 775 N.E.2d 463, 465 (N.Y. 2002); *Traditional Cat Ass'n, Inc. v. Gilbreath*, 118 Cal. App. 4th 392, 403-04 (Cal. Ct. App. 2004). Such interests, however, would hardly be promoted by a rule permitting a new cause of action to arise every time a few characters—due to the continually evolving nature of technology—in a URL address changes, even though the same allegedly defamatory statement continued to appear on the same website.

[7] We also reject Canatella's second contention that a new cause of action arose on July 27, 2004 when "Daetwyler . . . and others . . . repeat[ed] or republish[ed] the false and misleading summary to third persons" because Appellees knew or should have known that Daetwyler would use Canatella's disciplinary summary. In support of this claim, Canatella cites *Schneider v. United Airlines, Inc.*, 208 Cal. App. 3d 71, 75-78 (Cal. Ct. App. 1989), which held that United Airlines and another company could be held liable for the republication of an allegedly defamatory statement made by those companies to a credit reporting agency that then passed the information on to others. In so holding, *Schneider* rejected the argument that the single publication rule should bar such republication claims because the repetition was "foreseeable" and there was a "strong causal link between the actions of the originator and the damage caused by the republication." *Id.* at 75-76. At first glance, *Schneider* might appear to support Canatella's argument since Daetwyler cited Canatella's disciplinary record. That case is distinguishable, however, because whereas *Schneider* involved giving information to an agency *charged with republishing* that information in response to specific inquiries, Appellees merely posted the allegedly offensive statement on a public website. Therefore, unlike the defendants in *Schneider* who made an offensive statement to an

agency that they knew would report the information to others, Appellees had no similar foresight that Daetwyler would communicate the information posted on the internet. Moreover, far from constituting a republication, Appellee Daetwyler's decision to use the statements contained on the internet is more like the "mere continuing *impact* from [alleged] past violations [that] is not actionable" as a new cause of action, *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001) (internal quotation marks omitted), and as such, it cannot give rise to a new cause of action.

Finally, Canatella's third argument—that the single publication rule should not apply because his disciplinary record is provided in response to specific inquiries—is similarly flawed. In support of that argument, Canatella relies on *Swafford v. Memphis Individual Practice Ass'n*, 1998 WL 281935 (Tenn. Ct. App. Jun. 2, 1998), an unpublished state court opinion, which we have interpreted as holding that the single publication rule does not apply to a situation where "a *certified* entity *directly request[s]* [allegedly defamatory] information from [an] electronic data-bank held by the [defendant], [and] the [defendant] provide[s] the information directly to the requesting entity." *Oja*, 440 F.3d at 1133 (explaining *Swafford*, 1998 WL 281935, at *8) (emphasis in original). As we have previously observed, "*Swafford* is distinguishable from . . . and is not inconsistent with the application of the single publication rule to the vast majority of Internet publication[ ]" cases because "the information at issue in *Swafford* was not available for the general public to access, nor could any unregistered and non-specific entities access the registered databank," rather "*Swafford* is much more akin to the release of personal credit reports." *Id*. Therefore, even assuming, as Canatella argues, that a member search for his disciplinary record is a specific inquiry like in *Swafford*, Canatella's reliance on *Swafford* is misplaced because his disciplinary record has consistently been *generally available*. Accordingly, we reject Canatella's third contention.

**[8]** Consequently, as Canatella may only bring one cause of action arising from the publication of his disciplinary summary in any single source and the statute of limitations ran on that claim before he filed his complaint, we affirm the district court's dismissal order.

## III

For the reasons set forth above, the district court's order dismissing Canatella's § 1983 claims against Appellees is **AFFIRMED.**