**Herman Rene ONTIVEROS, Plaintiff,**

v.

**LOS ANGELES COUNTY, Los Angeles County Sheriff's Department, et al., Defendants.**

**No. CV 08–40220–VAP (RC).**

United States District Court, C.D. California.

April 18, 2009.

Herman Rene Ontiveros, Los Angeles, CA, pro se.

Eunice S. Lee, Thomas and Thomas, LLP, Glendale, CA, for defendants.

### JUDGMENT

VIRGINIA A. PHILLIPS, District Judge.

IT IS ADJUDGED that Judgment shall be entered: (1) dismissing plaintiff's first and second claims for relief without prejudice for failure to exhaust administrative remedies; (2) dismissing plaintiff's third claim for relief as barred by the statute of

limitations; and (3) dismissing plaintiff's state law claims without prejudice.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the complaint along with the attached Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, and has made a *de novo* determination.

IT IS ORDERED that (1) the Report and Recommendation is approved and adopted; (2) plaintiff's first and second claims for relief shall be dismissed without prejudice due to plaintiff's failure to exhaust administrative remedies, and Judgment shall be entered accordingly; (3) plaintiff's third claim for relief shall be dismissed as barred by the statute of limitations, and Judgment shall be entered accordingly; and (4) plaintiff's state law claims shall be dismissed without prejudice, and Judgment shall be entered accordingly.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order and the Magistrate Judge's Report and Recommendation by the United States mail on the plaintiff.

## REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE

ROSALYN M. CHAPMAN, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Virginia A. Phillips, United States District Judge, by Magistrate Judge Rosalyn M. Chapman, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05–07 of the United States District Court for the Central District of California.

## BACKGROUND

### I

On June 23, 2008, plaintiff Herman Rene Ontiveros, a state inmate proceeding pro se and in forma pauperis, filed a complaint under 42 U.S.C. § 1983 against defendants Los Angeles County ("County"), County Sheriff's Department, Dr. Arakel Davtian (erroneously sued as Davtian Arakel) (a County Sheriff's Department psychiatrist), and County Deputy Sheriffs John Does nos. 1–13 and Jane Doe no. 1, and on August 8, 2008, plaintiff filed an amended complaint against defendant County, County Sheriff's Department, County Sheriff Lee Baca, in his official and individual capacities, Dr. Arakel Davtian, in his individual capacity, and County Deputy Sheriffs John Doe nos. 2–13. In his amended complaint ("AC"), plaintiff raises three claims for deliberate indifference to his serious medical needs and denial of due process of law in violation of the Eighth and Fourteenth Amendments and the California Constitution, Art. I, §§ 7, 17. AC at 11–27. The plaintiff seeks damages and an order requiring defendants to fix his injuries. *Id.* at 28.

In Claim One, plaintiff alleges the following: On March 22, 2007, when he was booked into the Los Angeles County Jail, he informed many unit personnel of his need for psychotropic medication, which he had been taking since 1998, but had run out of approximately two weeks before his arrest. AC 12–13. For instance, on March 26, 2007, when defendant Davtian evaluated plaintiff, plaintiff informed defendant Davtian that he was suicidal and needed medication; however, defendant Davtian denied plaintiff medication and mental health treatment for his condition. *Id.* at 14, Exh. H.[1] Rather, Dr. Davtian

---

1. The plaintiff attached various documents as   exhibits to his amended complaint. "If a

diagnosed plaintiff as malingering,[2] recommended placing plaintiff in the general jail population, and stated there was no indication for medication because plaintiff was alert and oriented, his speech was clear, his thinking process was linear, plaintiff had average impulse control and judgment, and plaintiff denied any suicidal or homicidal ideations or auditory or visual hallucinations. *Id.*, Exh. H. The next day, plaintiff attempted suicide, cutting his left arm with a razor, *id.* at 14, Exh. I, and Susan M. O'Connor, M.D., a jail psychiatrist, then prescribed medication to plaintiff.[3] *Id.* at 15, Exhs. J–K.

In Claim Two, plaintiff alleges the following: On April 20, 2005, while in the County Jail, defendants Does nos. 2–4 placed him in waist chain restraints, took him into a hallway and threw full milk containers at him. AC at 17. Does nos. 2–3 then grabbed plaintiff, hit him, threw him to the floor, and kicked him, while defendant Doe no. 4 watched and did nothing to help plaintiff. *Id.* at 18. Defendants also denied plaintiff emergency medical treatment. *Id.* at 19. Defendant Doe no. 5, a Sergeant, denied him emergency medical treatment and informed plaintiff that if he told no one about the beating, the Sergeant "would take real good care of [him.]" *Id.* Plaintiff subsequently attempted suicide by cutting himself with a jagged piece of metal, *id.*, and was taken to County–USC Medical Center ("County–USC") for treatment. *Id.* at 20, Exhs. L–N. Subsequently, a Sheriff's Department Sergeant and a social worker made reports

regarding the beating. *Id.* at 20–21, Exh. O.

On May 19, 2005, plaintiff again attempted suicide by cutting himself, and he was again treated at County–USC. *Id.* at 21, Exhs. Q–R. When plaintiff returned from hospital on May 19, 2005, defendants Does nos. 6 and 7 hit him and pushed him into the walls many times while he was handcuffed, rupturing the sutures in his arm. *Id.* Does nos. 6 and 7 then handcuffed plaintiff, who was naked, to his cell door and left him there for at least 6 hours, until plaintiff was discovered by a social worker, who had him transferred to a psychiatric hospital. *Id.* at 21–22, Exhs. S–T. Defendant Does 8 through 12 took plaintiff, who was handcuffed and naked, to a secluded area and beat him. *Id.* at 22–23. On May 20, 2005, plaintiff was taken to County–USC for emergency treatment because his sutures had ruptured, but the wound could not be properly treated because too much time had passed, leaving plaintiff with a "terrible scar" on his arm. *Id.* at 23, Exh. U.

In Claim Three, plaintiff alleges the following: On or about May 8, 1998, he was booked into the County Jail and prescribed psychotropic medication; however, he was over-medicated and got lost. AC at 26. Plaintiff approached defendant Doe no. 13 and asked for help, but defendant Doe no. 13 "cussed [him] out with profanity" and locked him in a cell full of African–Americans, who "jumped" him and one of whom stabbed him. *Id.* at 26–27.

---

complaint is accompanied by attached documents, the court is not limited by the allegations contained in the complaint. These documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim." *Roth v. Garcia Marquez,* 942 F.2d 617, 625 n. 1 (9th Cir.1991) (citations and internal punctuation omitted); *National Ass'n for the Advancement of Psychoanalysis v. California Bd. of Psychology,* 228 F.3d 1043, 1049

(9th Cir.2000), *cert. denied.* 532 U.S. 972, 121 S.Ct. 1602, 149 L.Ed.2d 469 (2001).

**2.** *See* American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders,* 739–40 (4th ed. (Text Revision) 2000).

**3.** In prescribing plaintiff medication, Dr. O'Connor noted plaintiff had a history of snorting Wellbutrin and Seroquel and trading Seroquel for coffee. *Id.*, Exh. J.

## II

On October 13, 2008, defendants County, County Sheriff's Department, and Davtian filed a motion to dismiss plaintiff's amended complaint. However, plaintiff has not timely filed an opposition to defendants' motion to dismiss.

## DISCUSSION

## III

The Prison Litigation Reform Act of 1995 ("PLRA") requires exhaustion of administrative remedies for all "action[s] ... brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility...." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002); *Roles v. Maddox*, 439 F.3d 1016, 1018 (9th Cir.), *cert. denied*, 549 U.S. 905, 127 S.Ct. 232, 166 L.Ed.2d 183 (2006). "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." *Porter*, 534 U.S. at 524, 122 S.Ct. at 988; *Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 1819, 1825, 149 L.Ed.2d 958 (2001). "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones v. Bock*, 549 U.S. 199, 204, 127 S.Ct. 910, 914–15, 166 L.Ed.2d 798 (2007); *Woodford v. Ngo*, 548 U.S. 81, 94–95, 126 S.Ct. 2378, 2388, 165 L.Ed.2d 368 (2006).

■ "[T]he PLRA exhaustion requirement requires proper exhaustion[,]" meaning the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." *Ngo*, 548 U.S. at 83–84, 126 S.Ct. at 2387, 165 L.Ed.2d 368 (2006); *Griffin v. Arpaio*, 557 F.3d 1117, 1119–120 (9th Cir.2009). Rather, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Ngo*, 548 U.S. at 90–91, 126 S.Ct. at 2386; *see also Griffin*, 557 F.3d at 1119–120 (Proper exhaustion "means that a grievant must use all steps the prison holds out, enabling the prison to reach the merits of the issue"; yet, "[p]risoners need comply only with the prison's own grievance procedures to properly exhaust under the PLRA."). Moreover, to satisfy Section 1997e(a), an inmate must exhaust his administrative remedies prior to filing his complaint in federal court, and not during the pendency of his lawsuit. *Vaden v. Summerhill*, 449 F.3d 1047, 1051 (9th Cir. 2006); *Lira v. Herrera*, 427 F.3d 1164, 1170 (9th Cir.2005), *cert. denied*, 549 U.S. 1204, 127 S.Ct. 1212, 167 L.Ed.2d 72 (2007).

"[F]ailure to exhaust is an affirmative defense under the PLRA, and ... inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216, 127 S.Ct. at 921. Rather, "defendants have the burden of raising and proving the absence of exhaustion[,]" and they should raise failure to exhaust in an unenumerated Rule 12 motion. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir.), *cert. denied*, 540 U.S. 810, 124 S.Ct. 50, 157 L.Ed.2d 23 (2003); *Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir.2005). "In deciding a motion to dismiss for failure to exhaust nonjudicial rem-

edies, the court may look beyond the pleadings and decide disputed issues of fact." *Wyatt,* 315 F.3d at 1119–20.

■ Since at least 2000, the County Sheriff's Department has had a grievance process allowing current and former inmates to make complaints regarding any condition of confinement.[4] Pettus Decl. ¶¶ 2–3, Exhs. A–C. "The inmate complaint procedure is initiated when an inmate completes and submits an Inmate Complaint Form (or any written complaint of any kind) which may address any number of issues, including but not limited to personnel conduct, medical care, bedding, clothing, meals, classification and housing or other conditions of confinement." *Id.* ¶ 4. "All current and former inmates are permitted to report a complaint, whether or not it was written on the specified form"; however, "[a]s of May 2007, inmate complaints are required to be submitted within 15 calendar days after the event upon which the complaint is based, or the complaint will be denied." *Id.* ¶ 5. "All written

complaints are logged into a computer database, given a reference number, and assigned an investigator." *Id.* ¶ 6.

Here, defendants have submitted evidence showing that neither plaintiff nor anyone acting on his behalf has submitted any administrative grievances to the Sheriff's Department, Pettus Decl. ¶ 9, and plaintiff concedes this is so.[5] AC at 2; *see also* Complaint at 2 (plaintiff "did not file an [sic] grievance"). "A prisoner's concession to nonexhaustion is a valid ground for dismissal, so long as no exception to exhaustion applies." *Wyatt,* 315 F.3d at 1112. Since plaintiff has not properly exhausted his administrative remedies as to Claims One or Two,[6] the Court grants defendants' motion to dismiss these claims without prejudice. *Ngo,* 126 S.Ct. at 2382, 2387; *Brown,* 422 F.3d at 941–43.

## IV

■ The statute of limitations for Section 1983 actions is determined by state law.[7] *Wallace v. Kato,* 549 U.S. 384, 387,

---

4. "If a complaint cannot be informally resolved by the initial investigator to the satisfaction of the complainant, the assigned supervisor from the floor where the complaint originated will conduct an investigation to determine the validity of the complaint and will either resolve the complaint to the inmate's satisfaction or prepare a memorandum regarding the nature of the incident, action taken and whether the complaint was founded or unfounded[,]" and provide the inmate with a written response. Declaration of Wesley H. Pettus ("Pettus Decl.") ¶ 6. If the inmate's complaint is denied, the inmate may appeal the decision by submitting an Inmate Complaint Appeal Form "within five (5) calendar days of receiving the written disposition regarding [the inmate's] complaint" and "[t]he appropriate supervisor (watch commander, medical supervisor, mental health supervisor or food production supervisor) will make the final determination" of the appeal. *Id.* ¶ 7.

5. The unauthenticated mail logs plaintiff attaches to his complaint, *see* AC, Exhs. A–B,

show that any correspondence plaintiff may have sent to the Sheriff's Department was not a timely grievance; therefore, plaintiff did not properly exhaust his administrative remedies. *Ngo,* 548 U.S. at 83–84, 126 S.Ct. at 2387.

6. Since Claim Three relates to events occurring in 1998, and defendants have only submitted evidence concerning administrative remedies available since 2000, defendants have not met their burden of demonstrating plaintiff's failure to exhaust Claim Three. Nevertheless, for the reasons set forth below, Claim Three must be dismissed as time-barred.

7. Although the statute of limitations is a defense usually raised in a responsive pleading, it may be raised in a motion to dismiss if the running of the statute of limitations is apparent from the face of the complaint. *Ledesma v. Jack Stewart Produce, Inc.,* 816 F.2d 482, 484 n. 1 (9th Cir.1987); *Conerly v. Westinghouse Elec. Corp.,* 623 F.2d 117, 119 (9th Cir.1980).

127 S.Ct. 1091, 1094, 166 L.Ed.2d 973 (2007); *Wilson v. Garcia,* 471 U.S. 261, 269, 105 S.Ct. 1938, 1943, 85 L.Ed.2d 254 (1985); *Canatella v. Van De Kamp,* 486 F.3d 1128, 1132 (9th Cir.), *cert. denied,* — U.S. —, 128 S.Ct. 669, 169 L.Ed.2d 513 (2007). Section 1983 claims are characterized as personal injury actions for statute of limitations purposes. *Wilson,* 471 U.S. at 276, 105 S.Ct. at 1947; *Maldonado v. Harris,* 370 F.3d 945, 954 (9th Cir.2004), *cert. denied,* 544 U.S. 968, 125 S.Ct. 1725, 161 L.Ed.2d 615 (2005); *Azer v. Connell,* 306 F.3d 930, 935 (9th Cir.2002). Effective January 1, 2003, the statute of limitations for personal injury actions in California, Cal.Code of Civ. Proc. ("C.C.P.") § 335.1, is two years. *Canatella,* 486 F.3d at 1132; *Jones v. Blanas,* 393 F.3d 918, 927 (9th Cir.2004), *cert. denied,* 546 U.S. 820, 126 S.Ct. 351, 163 L.Ed.2d 61 (2005). Prior to January 1, 2003, the statute of limitations for personal injury actions in California, Former Cal.Civ.Proc.Code § 340(3) (2000), was one year. *Maldonado,* 370 F.3d at 954–55; *Fink v. Shedler,* 192 F.3d 911, 914 (9th Cir.1999), *cert. denied,* 529 U.S. 1117, 120 S.Ct. 1979, 146 L.Ed.2d 808 (2000). "Because [C.C.P. § 335.1] does not apply retroactively, any cause of action that was more than one-year old as of January 1, 2003 would be barred under the previous one-year statute of limitations." *Canatella,* 486 F.3d at 1132–33; *Stanley v. Trustees of Cal. State Univ.,* 433 F.3d 1129, 1136 (9th Cir.2006).

■ Federal law determines when a cause of action accrues and the statute of limitations period begins to run for a Section 1983 action. *Wallace,* 549 U.S. at 387, 127 S.Ct. at 1095; *Lukovsky v. City &* County of San Francisco, 535 F.3d 1044, 1048 (9th Cir.2008), *cert. denied,* — U.S. —, 129 S.Ct. 1997, 173 L.Ed.2d 1086 (2009). "'Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.'" *Maldonado,* 370 F.3d at 955 (citations omitted); *Canatella,* 486 F.3d at 1133. Here, with regard to Claim Three, plaintiff's cause of action accrued on May 8, 1998, when plaintiff was injured, and his claim against defendants accrued when he was transferred from the Sheriff's Department's custody, which occurred no later than the end of 1998.[8] *Fink,* 192 F.3d at 914; *TwoRivers v. Lewis,* 174 F.3d 987, 992 (9th Cir.1999). Thus, plaintiff had one year from December 31, 1998, or until December 31, 1999, to timely file his complaint. Plaintiff did not do so.

■ Nevertheless, this Court must consider whether plaintiff is entitled to tolling the statute of limitations. State law governs any tolling of the statute of limitations for Section 1983 claims. *Wallace,* 549 U.S. at 394, 127 S.Ct. at 1098–99; *Hardin v. Straub,* 490 U.S. 536, 543–44, 109 S.Ct. 1998, 2002–03, 104 L.Ed.2d 582 (1989); *Daviton v. Columbia/HCA Healthcare Corp.,* 241 F.3d 1131, 1135 (9th Cir. 2001) (en banc). Here, even assuming *arguendo* that plaintiff is entitled to tolling under C.C.P. § 352.1 for the maximum two-year period,[9] Claim Three is still untimely since it was not brought by December 31, 2001. Therefore, Claim Three is untimely and must be dismissed.

### V

Having dismissed plaintiff's federal claims, this Court declines to retain juris-

---

**8.** Plaintiff alleges Claim Three occurred "sometime in 1998." AC at 3.

**9.** C.C.P. Section 352.1 provides, in part, as follows:

(a) If a person entitled to bring an action ... is, at the time the cause of action accrued, imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life, the time of that disability is not a part of the time limited for the commencement of the action, not to exceed two years.

diction over plaintiff's supplemental state claims because no federal cause of action remains. 28 U.S.C. § 1367(c); *Brown v. Lucky Stores, Inc.,* 246 F.3d 1182, 1189 (9th Cir.2001); *Voigt v. Savell,* 70 F.3d 1552, 1565 (9th Cir.1995), *cert. denied,* 517 U.S. 1209, 116 S.Ct. 1826, 134 L.Ed.2d 931 (1996).

### RECOMMENDATION

For the foregoing reasons, IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) entering Judgment dismissing plaintiff's first and second claims for relief without prejudice for failure to exhaust administrative remedies; (3) entering Judgment dismissing plaintiff's third claim for relief as barred by the statute of limitations; and (4) entering Judgment dismissing plaintiff's state law claims without prejudice.