**Aurelio Cervantes MORALES, an individual, Plaintiff–Appellant,**

**v.**

**CITY OF LOS ANGELES, a municipal corporation, Antonia Dimarco–Serna, an individual, Bennie Boatwright, an individual, Stan Nelson, an individual, Gregory D. Beckley, an individual, John Chavez, an individual, Defendants–Appellees.**

**Guadalupe Medrano, Amparo Medrano, Plaintiffs–Appellants,**

**v.**

**City of Los Angeles, William Hall, Robert Seeman, Don S. Anderson, Rodolfo Romero, Donnelly Mallory, Defendants–Appellees.**

Nos. 98–56478, 99–55431.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 8, 2000.

Filed June 12, 2000.

Donald W. Cook, Los Angeles, California, for the plaintiffs-appellants.

Katherine J. Hamilton, Assistant City Attorney, Los Angeles, California, for the defendants-appellees.

Appeals from the United States District Court for the Central District of California; Christina A. Snyder (98–56478), William D. Keller (99–55431), District Judges, Presiding. D.C. Nos. CV 98–03939 CAS, CV 98–05505 WDK.

Before: FERNANDEZ, TASHIMA, and SILVERMAN, Circuit Judges.

SILVERMAN, Circuit Judge:

The plaintiffs allege in *this* action that police perjury and other misconduct occurring in a *previous* civil rights lawsuit caused them to lose *that* case, thus depriving them of their due process right of access to the courts. This issue today concerns the statute of limitations. When does such a cause of action accrue? Does the statute of limitations begin to run when the plaintiffs lose their case in the trial court and have judgment entered against them? Or is it upon the unsuccessful exhaustion of all appeals of that judgment? We hold that it is the former, i.e., when a final judgment is entered in the trial court. We also hold, however, that under California law, the statute of limitations is tolled from the date of the filing of the notice of appeal until the date the appeal becomes final.

## I. Background

### A. The Medrano Case

The Medranos filed their first lawsuit in federal court alleging denial of their federal civil rights pursuant to 42 U.S.C. § 1983. These claims centered around plaintiffs' allegations that Los Angeles Police Department officers wrongfully killed their son, Ruben. After the case bounced from the district court to this court and eventually to state court, the Medranos lost at trial. On June 20, 1995, a Los

Angeles jury returned a verdict in favor of all of the defendants. The state court entered judgment on June 21, 1995, and the Medranos appealed on August 17, 1995. The California Court of Appeal affirmed. On July 9, 1997, the California Supreme Court denied review.

On July 9, 1998, the Medranos filed a second civil rights lawsuit, also in federal district court, alleging that the police officers violated the Medranos' right to access to the courts by conspiring to conceal the true nature of the shooting to defeat the Medranos' first civil rights lawsuit. The defendants moved to dismiss the complaint as barred by the statute of limitations and requested that the district court take judicial notice of the judgment entered in the first action. The district court granted both the motion for judicial notice and the motion to dismiss. In so ruling, the court held that plaintiffs' cause of action accrued by no later than June 20, 1995, the date on which the state jury returned its verdict adverse to the plaintiff. Applying the one-year statute of limitations, the court thus held that this action, filed over three years later, was time-barred.

### B. The Morales Case

In 1989, Morales was arrested by Los Angeles police officers and charged with sale of cocaine. At a jury trial, he was acquitted. Thereafter, on November 27, 1990, Morales filed a civil rights lawsuit under 42 U.S.C. § 1983 and California law in Los Angeles County Superior Court alleging that L.A.P.D. officers falsified police reports and records in an effort wrongfully to secure his conviction. On April 4, 1995, the trial court granted a motion for non-suit and entered judgment for the defendants. The California Court of Appeal affirmed the judgment in an unpublished opinion. The California Supreme Court denied review on February 3, 1998.

On May 20, 1998, Morales filed a second civil rights action, this time in federal court, alleging that the police officers falsely arrested him, fabricated a police report, destroyed records, and testified falsely at the state civil trial that ended in the non-suit on April 4, 1995. Morales alleged that these actions violated his due process right to access to the courts and California state law.

Defendants filed a motion for judicial notice of the earlier state court judgment and moved to dismiss the complaint for failure to file the action within the period of the statute of limitations. The district court dismissed the complaint, holding that the one-year limitations period began to run on April 4, 1995, the date on which the Los Angeles County Superior Court entered judgment against Morales, and consequently, that the complaint filed on May 20, 1998, was time-barred.

 We have jurisdiction pursuant to 28 U.S.C. § 1291 and review both Fed. R.Civ.P. 12(b)(6) dismissals de novo. We accept all factual allegations of the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Tworivers v. Lewis,* 174 F.3d 987, 991 (9th Cir.1999). The district court may grant a 12(b)(6) motion to dismiss on statute of limitations grounds " 'only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.' " *Id.,* (quoting *Vaughan v. Grijalva,* 927 F.2d 476, 478 (9th Cir.1991)).

## II. Statute of Limitations

### A. Accrual

 Actions brought pursuant to 42 U.S.C. § 1983 are governed by the state statutes of limitations for personal injury actions. *Wilson v. Garcia,* 471 U.S. 261, 275, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *Fink v. Shedler,* 192 F.3d 911, 914 (9th Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 1979, 146 L.Ed.2d 808 (2000). The one-year statute of limitations for personal injury actions set forth in Cal.Civ.Proc. Code § 340 applies to § 1983 actions filed in California. *Del Percio v. Thornsley,* 877 F.2d 785, 786 (9th Cir.1989). Although state law determines the length of the

limitations period, federal law determines when a civil rights claim accrues. *Tworivers*, 174 F.3d at 991. As we said in *Tworivers*, "[u]nder federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.* The primary question, then, is when did these plaintiffs know or have reason to know of the injury of which they complain?

The plaintiffs in both cases allege that police misconduct caused them wrongfully to lose their earlier lawsuits. The plaintiffs argue "it's not over 'til it's over" and that they didn't know that they truly had lost their case until they had exhausted their appeals. They reason that, had they prevailed on appeal, they wouldn't have suffered the injury that gives rise to their damages.

The defendants, on the other hands, argue that the plaintiffs first knew or had reason to know that they lost their lawsuits *when* they lost their lawsuits, not when the losses were subsequently upheld on appeal. They argue that it is knowledge of having been caused injury, not subsequent judicial verification of the injury, that starts the running of the statute of limitations. This argument derives from the Supreme Court's decision in *Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), in which the Court held that the limitations period in a Title VII action began to run on the date that the plaintiff was first notified of the denial of tenure, not the date of the eventual loss of his teaching position. The Court said, " 'the proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful.' " *Id.* (quoting *Abramson v. University of Hawaii*, 594 F.2d 202, 209 (9th Cir.1979)).

Although we have not considered this precise issue before, the Second Circuit has. In *Veal v. Geraci*, 23 F.3d 722 (2d Cir.1994), the plaintiff was convicted and sentenced to prison on June 22, 1988, for robbery and larceny. In 1990, his conviction was reversed on appeal. On March 27, 1992, the plaintiff brought his § 1983 lawsuit for damages alleging that his due process rights were violated when he was subjected to a tainted lineup that caused his conviction. A three-year statute of limitations applied; the issue was when did it began to run. *Id.* at 724. The Second Circuit held that Veal's cause of action accrued "no later than June 22, 1988, when Veal was sentenced for the crimes of which he was convicted with the aid of that identification." *Id.* at 726. That is the date on which he knew or had reason to know of the injury which is the basis of his action.

> The reference to "know[ledge] of the injury" does not suggest that the statute does not begin to run until the claimant has received judicial verification that the defendant's acts were wrongful. Rather, the claim accrues when the alleged conduct has caused the claimant harm and the claimant knows or has reason to know of the allegedly impermissible conduct and the resulting harm.

*Id.* at 724 (citations omitted).

We agree with this approach. Morales's and the Medranos' causes of action accrued when the alleged police misconduct resulted in judgments being entered against them. At that point, they knew or had reason to know that the alleged misconduct actually caused concrete injury.[1] The possibility that a subsequent appellate reversal of the judgments might moot the cause of action does not affect the analysis. Accrual and mootness principles operate independently of each other.

We also note that our decisions in *Delew v. Wagner*, 143 F.3d 1219 (9th Cir.), *cert. denied*, 525 U.S. 1015, 119 S.Ct. 538, 142 L.Ed.2d 448 (1998), and *Karim–Panahi v.*

---

**1.** In the *Medrano* case, the district court ruled that the cause of action accrued on the date the verdict was returned. Because district court proceedings are not final until the judgment is entered, we hold that the date of entry of judgment, not the date of verdict, begins the running of the limitations period.

*Los Angeles Police Dep't.*, 839 F.2d 621 (9th Cir.1988), are not at all inconsistent with our conclusion today. In both *Delew* and *Karim–Panahi*, the plaintiffs brought denial-of-access-to-the-courts claims arising from alleged police misconduct occurring in *on-going* state trial court proceedings. We held that such claims are not ripe until the trial court proceedings are concluded adversely to the plaintiffs. *Delew*, 143 F.3d at 1223; *Karim–Panahi*, 839 F.2d at 625.

### B. Tolling

■ We next consider whether the limitations period is tolled while the adverse judgment is appealed. *Tworivers*, 174 F.3d at 991. Because we borrow the California state statute of limitations, we also apply California's tolling rules that are not inconsistent with federal law. *Fink*, 192 F.3d at 914. Both the Medranos and Morales argue that the California tolling principles in malicious prosecution cases should be applied to this case because the causes of action are similar in one respect: neither cause of action exists until an underlying judgment has been entered by a court. Under California law, a malicious prosecution claim accrues on the date that the trial court enters judgment. The statute of limitations is then tolled during an appeal from the judgment. *Gibbs v. Haight, Dickson, Brown & Bonesteel*, 183 Cal.App.3d 716, 228 Cal.Rptr. 398, 402 (1986). However, the time between the filing of the judgment and filing of the notice of appeal is *not* tolled. *Id.* In other words, the limitations period *begins to run* on the date of judgment, is *tolled* from the date the notice of appeal is filed, and *begins to run again* when the state appellate court issues a remittitur.[2] *Rare Coin Galleries, Inc., v. A–Mark Coin Co.*, 202 Cal.App.3d 330, 248 Cal.Rptr. 341, 344 (1988).

■ We agree that California's tolling rule applies in these cases. It is not incon-

sistent with federal law. It also has the advantage of promoting judicial economy in that it encourages plaintiffs to wait for the appellate proceedings in the underlying case to fully run their course before initiating a denial-of-access-to-the-courts lawsuit. As previously noted, the reversal of the adverse judgment would moot such a claim. *Delew*, 143 F.3d at 1222–23; *Karim–Panahi*, 839 F.2d at 625.

### III. Conclusion

Because neither record contains the exact dates that the remittiturs were filed by the California Court of Appeal or, in Morales, the date the notice of appeal was filed, we cannot precisely apply these principles to the cases at hand. Both cases are REVERSED and REMANDED for further proceedings consistent with this decision.[3]

---

2. In California procedure, a remittitur is analogous to the mandate in federal appellate practice. *Rare Coin*, 248 Cal.Rptr. at 344.

3. These cases were consolidated for the sole purpose of appellate argument and decision and are now severed for all other purposes.