**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ALEX LUKOVSKY; MUHAMMED
KHAN; LARRY MITCHELL; ANTONIO
HUGGINS; SAMSON ASRAT,
*Plaintiffs,*

and

ANATOLIY ZOLOTAREV; YEVGENIY
SKURATOVSKY, individually and on
behalf of class members,
*Plaintiffs-Appellants,*

v.

CITY AND COUNTY OF SAN
FRANCISCO; JOHN SADORRA; RENATO
SOLOMON; VERNON CRAWLEY;
MICHAEL ELLIS; DORIS LANIER,
*Defendants-Appellees.*

No. 06-16665

D.C. No.
CV-05-00389-WHA

RICHARD GLASSMAN; MORRIS
JACOBS; MICHAEL HALL; IGNACIO
REYES,
*Plaintiffs-Appellants,*

v.

CITY AND COUNTY OF SAN
FRANCISCO; ELSON HAO; JIM
WACHOB; ALAN DEGUZMAN; TOM
HIDAYAT,
*Defendants-Appellees.*

No. 06-16946

D.C. No.
CV-06-02304-WHA

OPINION

10003

Appeal from the United States District Court
for the Northern District of California
William H. Alsup, District Judge, Presiding

Argued and Submitted
May 13, 2008—San Francisco, California

Filed August 7, 2008

Before: Diarmuid F. O'Scannlain, Michael Daly Hawkins,
and M. Margaret McKeown, Circuit Judges.

Opinion by Judge Hawkins

**COUNSEL**

Edith J. Benay, San Francisco, California, for the plaintiffs-appellants.

Jonathan C. Rolnick, City of San Francisco, San Francisco, California, for the defendants-appellees.

**OPINION**

HAWKINS, Circuit Judge:

These consolidated appeals involve suits against the City and County of San Francisco, San Francisco Municipal Transportation Agency ("MUNI"), and various individual defen-

dants (collectively, "Defendants") for race and national origin discrimination in violation of 42 U.S.C. §§ 1981, 1983, 1985 & 1986. Plaintiffs allege that Defendants discriminated against them by giving preferential hiring treatment to Asian and Filipino workers. We do not consider the merits of the plaintiffs' allegations, however, as the only issue before us is whether their claims are barred by the statute of limitations, as the district court found. We agree with the district court that (1) the cause of action accrued and the statute of limitations began to run when the plaintiffs received notice they would not be hired, and (2) equitable estoppel does not prevent the Defendants from asserting a statute of limitations defense. Accordingly, we affirm the district court in all respects.

## FACTS AND PROCEDURAL HISTORY

### Zolotarev, Appeal No. 06-16665:

In 1999 through 2000, MUNI advertised various provisional positions for electrical transit system mechanics ("7371 positions"). MUNI considered applications and written-performance tests, as well as some in-person interviews. In October 2000, MUNI obtained funding to hire several permanent 7371 mechanics, and issued a job announcement for these permanent positions. The announcement contained the following requirement:

> Verification (proof) of all experience and/or training needed to qualify must be submitted with the application . . . . Verification may be waived if impossible to obtain. The applicant must submit a signed statement with the application explaining why verification cannot be obtained . . . Failure to submit the required verification or request for waiver in a timely manner may result in the rejection of the application.

Two plaintiffs, Anatoliy Zolotarev and Yevgeniy Skuratovsky, filed their initial complaint in January 2005, together with several other plaintiffs who are not a party to this appeal ("the Lukovsky action").[1] These plaintiffs alleged that the Defendants discriminated on the basis of race—giving preferential treatment to Asian and Filipino applicants for the provisional and permanent 7371 positions by hiring Asian and Filipino applicants who did not meet the minimum qualifications. They also alleged Defendants failed to provide information about the 7371 openings to potential candidates who were not Asian or Filipino.

Plaintiff Skuratovsky applied for two provisional 7371 positions in 1999 and 2000, but was ranked below the hiring cutoff for both. He applied for a permanent 7371 position in October 2000, but failed to include an experience verification or seek a waiver of the requirement. He received notice in November 2000 that his application had been disqualified for failure to provide the verification.

Plaintiff Zolotarev did not apply for any of the 7371 positions in 1999 or 2000, However, he had previously applied for a similar mechanic position in 1998, and claims to have been informed that his application "would remain in the active file should a vacancy occur in the Division." He was not contacted by MUNI about any jobs in 2000 or 2001.

The Lukovsky plaintiffs sought and were denied class certification. The court's order, however, permitted the plaintiffs' counsel to send letters to other individuals who could potentially have similar claims, so that all such claims might be tried by the same judge. The district court then granted summary judgment in favor of the Defendants as to Skuratovsky and Zolotarev on statute of limitations grounds, concluding that these plaintiffs knew or should have known of their injury

---

[1]The remaining plaintiffs dismissed their claims with prejudice.

—i.e., that they had not been hired for the permanent position —for several years before they filed their complaint.

**Glassman, Appeal No. 06-16946**:

Four plaintiffs—Richard Glassman, Morris Jacobs, Michael Hall and Ignacio Reyes—were applicants for 7371 positions with MUNI during 2000. Glassman applied in June 2000 and was disqualified in November 2000, purportedly for failing to provide a written verification of his prior work experience. Jacob's application was rejected in October 2000 on the same grounds, as was Reyes's application in November 2000. Hall applied for a 7371 position in October 2000 and claims he never received notification that his application was rejected.

These plaintiffs received letters regarding the Lukovsky action in January-February 2006 and filed their complaint on March 31, 2006, alleging that Defendants gave preferential treatment to Asian and Filipino applicants who did not meet the minimum qualifications for the job. They also contend Defendants modified the requirements for 7371 positions in late 2000 to purportedly make it easier to hire Asian and Filipino applicants, and that the Defendants failed to provide sufficient information about the 7371 positions to non-Asian and non-Filipino candidates.

The district court granted the Defendants' motion to dismiss the complaint under Rule 12 (b)(6) of Civil Procedure on statute of limitations grounds, concluding that the plaintiffs had notice of their injury when they received the notices informing them they were not being hired, or, in the case of Hall, by early 2001 (when those accepted for the position would have reported to work).

## STANDARD OF REVIEW

We review de novo the district court's dismissal on statute of limitations grounds, *Mann v. American Airlines*, 324 F.3d

1088, 1090 (9th Cir. 2003), and the court's ruling on summary judgment, *General Bedding Corp. v. Echevarria*, 947 F.2d 1395, 1396 (9th Cir. 1991). We review for an abuse of discretion the district court's decision that defendants should not be equitably estopped from asserting a statute of limitations defense. *See Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1175 (9th Cir. 2000).

## DISCUSSION

### I.   When did Plaintiffs' claims accrue?

[1] When, as here, a federal civil rights statute does not include its own statute of limitations, federal courts borrow the forum state's limitations period for personal injury torts, which the parties agree in this case is one year under California law. *Taylor v. Regents of Univ. Of Cal.*, 993 F.2d 710, 711 (9th Cir. 1993) (applying one-year limitations period to claims brought pursuant to 42 U.S.C. §§ 1981, 1983 and 1985).[2] Although California law determines the *length* of the limitations period, federal law determines when a civil rights claim *accrues*. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 926 (9th Cir. 2004) (quoting *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153-54 (9th Cir. 2000)). Accrual is the date on which the statute of limitations begins to run; under federal law, a claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.* (quoting *Two Rivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999)).

Plaintiffs argue that their claims did not accrue until they

---

[2]Section 1981 was amended in 1990 to include a four-year limitations period for certain actions; however, this period does not apply to those actions which were cognizable under the pre-1990 version, such as plaintiffs' failure to hire claim. *See Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 974 n.5 (9th Cir. 2004); *Patterson v. McLean Credit Union*, 491 U.S. 164, 180-82 (1989).

knew both that they were not being hired *and* of the Defendants' alleged discriminatory intent. In other words, plaintiffs contend that knowledge of "injury" includes both the actual injury (failure to hire) and the legal wrong (racial discrimination). The Zolotarev plaintiffs assert they had no reason to know of the legal injury until informed years later by a MUNI employee that allegedly unqualified Asians and Filipinos had been hired; the Glassman plaintiffs claim they had no reason to know of the Defendants' discriminatory conduct until they received the letter informing them of the Zolotarev lawsuit.

Plaintiffs frame their argument in terms of the "discovery rule," which postpones the beginning of the limitations period from the date the plaintiff is actually injured to the date when he discovers (or reasonably should discover) he has been injured. *See O'Connor v. Boeing North Am., Inc.*, 311 F.3d 1139, 1147 (9th Cir. 2002). However, this rule is already incorporated into federal accrual law. *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450-51 (7th Cir. 1990). The real question, as noted above, is what do we mean by "injury," that is, what must the plaintiffs "discover"—that there has been an adverse action, or that the employer acted with discriminatory intent in performing that act?

This issue has not been expressly addressed in this circuit. *See Lyons v. England*, 307 F.3d 1092, 1107 n.9 (9th Cir. 2002) (noting that prior cases dealing with accrual under Title VII had not resolved "the more subtle question of when the date of a plaintiff's notice that the act was discriminatory, and not the date of the act's occurrence" should be the preferred date for commencing the statute of limitations).[3] Nor has the

---

[3]Although the plaintiffs' actions in this case arise under §§ 1981, 1983, 1985, and 1986, we note that, of course, the majority of employment cases involve private employers. We therefore consider cases arising under other federal laws, such as Title VII or the ADEA, to be instructive. *See, e.g.*, *Delaware State College v. Ricks*, 449 U.S. 250 (1980) (analyzing commencement of statute of limitations under both Title VII and Section 1981).

Supreme Court had occasion to clarify the issue. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 n.7 (2002); *id.* at 123-24 (O'Connor, J., concurring) (recognizing that "although Supreme Court precedents seem to establish a relatively simple 'notice' rule . . . , courts continue to disagree on what the notice must be *of*") (quotations omitted) (emphasis in original); *but see id.* at 114 (noting that discrete acts, such as termination and refusal to hire, are easy to identify).

**[2]** However, numerous other circuits have explicitly addressed this precise question in a variety of employment contexts, and have concluded that the claim accrues upon awareness of the actual injury, i.e., the adverse employment action, and not when the plaintiff suspects a legal wrong. For example, in *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380 (3d Cir. 1994), the court explained:

> The question arises whether a plaintiff's discovery of the actual, as opposed to the legal, injury is sufficient to trigger the running of the statutory period. In other words, does the statutory period begin to run upon a plaintiff's learning that he or she has been discharged from employment, for example, or does it begin to run only after a plaintiff comes to realize that the discharge constituted a legal wrong? We have in the past stated that a claim accrues in a federal cause of action upon awareness of the actual injury, not upon awareness that this injury constitutes a legal wrong.

*Id.* at 1386. The Sixth Circuit similarly opined in *Amini v. Oberlin College*, 259 F.3d 493 (6th Cir. 2001):

> Amini learned of his injury when Oberlin informed him that he would not be hired for its vacant statistics position. As stated, the proper focus for purposes of determining the commencement of the [statute of] limitations period is on the discriminatory act itself

and when that act was communicated to the plaintiff. Amini's attempt to stop the running of the [ ] clock until he discovered the facts that led him to suspect discrimination is best addressed as a question of equitable tolling.

*Id.* at 500; *see also Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 267 (7th Cir. 1995) (claim accrued upon termination, even though plaintiff did not discover he was replaced by younger employee until later; "[a] plaintiff's action accrues when he discovers that he has been injured, not when he determines that the injury was unlawful"); *Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323, 1327-28 (8th Cir. 1995) (limitations period runs from date discriminatory act occurs, not when victim first perceives discriminatory motive); *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 558-59 (10th Cir. 1994) ("notice or knowledge of discriminatory motivation is not a prerequisite for a cause of action to accrue . . . . it is the knowledge of the adverse employment decision itself that triggers the running of the statute of limitations"); *Hamilton v. 1st Source Bank*, 928 F.2d 86, 88-89 (4th Cir. 1990) ("To the extent that notice enters the analysis, it is the notice of the employer's actions, *not* the notice of a discriminatory effect or motivation, that establishes the commencement of the pertinent filing period."); *Merril v. S. Methodist Univ.*, 806 F.2d 600, 604-05 (5th Cir. 1986) (rejecting argument that court should focus on the date the victim perceives a discriminatory motive rather than the actual date of the act itself).

**[3]** We find these opinions persuasive. Moreover, they are consistent with the Supreme Court's opinion in *Ricks*, which involved an action under Title VII and Section 1981, and focused on when the plaintiff became aware of the adverse employment decision. *Ricks* concluded the statute of limitations under both commenced when the adverse decision was communicated to Ricks, even though the consequences of the action were not fully felt at that time. 449 U.S. at 258-59, 261-62; *see also Ledbetter v. Goodyear Tire & Rubber Co.,*

*Inc.*, 127 S. Ct. 2162 (2007). In this circuit, we have similarly emphasized the plaintiff's awareness of the adverse employment action as critical to the accrual analysis. *See Olsen*, 363 F.3d at 927 (section 1983 claim accrued on date when plaintiff received letter notifying her that medical board was denying her license reinstatement).

**[4]** In addition, this view also seems analogous to cases in this circuit under the Federal Tort Claims Act ("FTCA"). For example, we have held that an FTCA claim accrues when the plaintiff knew or in the exercise of reasonable diligence should have known of the injury and the cause of that injury, but is not deferred until the plaintiff has evidence of fault. *Davis v. United States*, 642 F.2d 328, 331 (9th Cir. 1981) (citing *United States v. Kubrick*, 444 U.S. 111 (1979)). Thus, in *Davis*, we determined that the statute of limitations accrued when plaintiff knew he had been injured and that the likely cause was the Sabin vaccine; however, accrual was not further deferred until plaintiff had reason to suspect governmental negligence. *Id.* at 331. We noted that once a plaintiff knows that harm has been done to him, he must "determine within the period of limitations whether to sue or not, which is precisely the judgment that other tort claimants must make." *Id.* (internal quotation marks omitted).

To counter this wealth of authority, plaintiffs point to language in *Aronsen v. Crown Zellerbach*, 662 F.2d 584, 593 (9th Cir. 1981), in which we stated that in ADEA suits, the limitations period is activated once "the employee knows or should know that an unlawful employment practice has been committed." In the context of the case, however, the clear focus of this sentence is on *when* plaintiff received notice of his termination—on the date the termination was informally communicated to him, or when he was officially terminated and his paychecks ceased nearly a year later. *Id.* at 585-86. We went on to note in passing that receipt of "written notice of termination would clearly shorten the inquiry concerning the employee's knowledge of termination date (though not

necessarily knowledge of an unlawful employment practice).” *Id.* at 593-94. We did not decide the issue presented in this case, however, because we remanded the case for further proceedings in light of the factual debate about when Aronsen actually knew of his termination. *Id.* at 594.

Plaintiffs also attempt to rely on language in *Morales v. City of Los Angeles*, in which we quoted a Second Circuit case to say that a “claim accrues when the alleged conduct has caused the claimant harm and the claimant knows or has reason to know of the allegedly impermissible conduct and the resulting harm.” 214 F.3d at 1154 (quoting *Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir. 1994)). However, the holding of *Morales* (and *Veal* for that matter) was limited to the *finality* of the harm; we concluded that the plaintiffs had been injured when they lost their lawsuits, not when the losses were subsequently upheld on appeal. *See id.* Again, we had no occasion to consider or decide the question we now face.

**[5]** These stray remarks in cases that did not actually confront the issue before us do not compel us to disagree with our sister circuits that a claim accrues under federal law when the plaintiff knows or has reason to know of the actual injury. *See, e.g.*, *Inlandboatmens Union of Pac. v. Dutra Group*, 279 F.3d 1075, 1081 (9th Cir. 2002) (later panel not bound by tangential remark made in earlier case). In this case, as the district court found, the claim accrued when the plaintiffs received notice they would not be hired (or, in the case of plaintiffs Zolotarev and Hall, when they should have realized they had not been hired for the position). *Cf. Grimes v. City and County of San Francisco*, 951 F.2d 236, 239 (9th Cir. 1991) (termination is discrete act that triggers running of statute of limitations); *see also Morgan*, 536 U.S. at 114 (“Discrete acts such as . . . refusal to hire are easy to identify.”). At this point, the plaintiffs knew they had been injured and by whom, *see Kubrick*, 444 U.S. at 113, even if at that point in time the plaintiffs did not know of the legal injury,

i.e., that there was an allegedly discriminatory motive under-
lying the failure to hire.[4]

## II.  Equitable Tolling/Equitable Estoppel

Notwithstanding the foregoing, there are two doctrines
which may apply to extend the limitations period or preclude
a defendant from asserting the defense— equitable tolling and
equitable estoppel. The federal version of these doctrines is
concisely explained in *Johnson v. Henderson*, 314 F.3d 409
(9th Cir. 2002). "Equitable tolling" focuses on "whether there
was excusable delay by the plaintiff: If a reasonable plaintiff
would not have known of the existence of a possible claim
within the limitations period, then equitable tolling will serve
to extend the statute of limitations for filing suit until the
plaintiff can gather what information he needs." *Id.* at 414
(quotation omitted). Equitable estoppel, on the other hand,
focuses primarily on actions taken by the *defendant* to prevent
a plaintiff from filing suit, sometimes referred to as "fraudu-
lent concealment." *Id.* (citing *Cada v. Baxter Healthcare
Corp.* 920 F.2d 446, 450-51 (7th Cir. 1990)).

The plaintiffs in this case have expressly disavowed any
reliance on equitable tolling. We therefore leave for another
day the consideration of what circumstances would justify
equitable tolling of the statute of limitations in this type of case.[5]

---

[4]We note that various other circuits have also considered whether a rea-
sonable plaintiff should have suspected discrimination and discovered the
legal wrong within the limitations period as relevant to the issue of equita-
ble tolling. *See Amini*, 259 F.3d at 501; *Thelen*, 64 F.3d at 267-68 and
*Dring*, 58 F.3d at 1328-29. As discussed in Section II below, we are not
called upon to decide this issue today.

[5]The plaintiffs' position seems driven by California's equitable tolling
principles. We note, however, that California tolling law only applies to
the extent it is not inconsistent with federal law. *Azer v. Connell*, 306 F.3d
930, 936 (9th Cir. 2002). The plaintiffs do not argue that California's
requirements are inconsistent with federal equitable tolling principles, and
we decline to sua sponte reach issues which have not been raised.

However, they do argue that Defendants should be equitably estopped from asserting a statute of limitations defense because, they contend, the Defendants' misrepresentations about requiring written verification of qualifying experience concealed that they were hiring unqualified Asian and Filipino applicants instead.

Under California law, equitable estoppel requires that:

> (1) the party to be estopped must be apprised of the facts; (2) that party must intend that his or her conduct be acted on, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and (4) the party asserting the estoppel must reasonably rely on the conduct to his or her injury.

*Honig v. San Francisco Planning Dep't*, 127 Cal. App. 4th 520, 529 (2005). California equitable estoppel is thus similar to and not inconsistent with federal common law, as both focus on actions taken by the defendant which prevent the plaintiff from filing on time. *See Santa Maria*, 202 F.3d at 1176.

[6] The primary problem with plaintiffs' argument is that their alleged basis for equitable estoppel is the same as their cause of action. As we have previously explained, the plaintiff must point to some fraudulent concealment, some active conduct by the defendant "*above and beyond* the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time." *Guerrero v. Gates*, 442 F.3d 697, 706 (9th Cir. 2006) (quoting *Santa Maria*, 202 F.3d at 1176-77) (emphasis added).

The Seventh Circuit persuasively explains why this rule must be the case:

If [defendant] had told [plaintiff] that it would not plead the statute of limitations as a defense to any suit for age discrimination that he might bring, this would be a case for equitable estoppel; so also if [defendant] had presented [plaintiff] with forged documents purporting to negate any basis for supposing that [plaintiff's] termination was related to his age. [Plaintiff] tries to bring himself within the doctrine by contending that [stated reason for termination] was a ruse to conceal the plan to fire him because of his age. This merges the substantive wrong with the tolling doctrine . . . . It implies that a defendant is guilty of fraudulent concealment unless it tells the plaintiff, "We're firing you because of your age." It would eliminate the statute of limitations . . . .

*Cada*, 920 F.2d at 451.

[7] The plaintiffs in this case make a similar attempt to circumvent the requirements of equitable estoppel. They do not point to any misrepresentation by the Defendants that concealed the composition of the applicant pool, the qualifications of those actually hired, or any promise by which the Defendants discouraged plaintiffs from timely asserting their rights. The district court properly denied the claim for equitable estoppel.[6]

## CONCLUSION

The district court correctly determined that the plaintiffs' claims accrued at the time they received notice they would not be hired or, in the case of plaintiffs Zolotarev and Hall, when a reasonable person would have realized he had not been

---

[6]The Zolotarev plaintiffs also argue that, if their claims were timely, the district court abused its discretion by denying them leave to file a Third Amended Complaint. We deny this claim as moot.

hired. The plaintiffs in this case have waived any claim for equitable tolling and the district court did not abuse its discretion in rejecting the plaintiffs' claim for equitable estoppel, as the plaintiffs did not allege any fraudulent concealment or misrepresentation above and beyond the actual basis for the lawsuit.

**AFFIRMED.**