**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

CHRISTINA ST. CLAIR, an individual,

　　　　　*Plaintiff - Appellant*,

　v.

COUNTY OF OKANOGAN, a municipal corporation; ISAIAH HOLLOWAY, an individual and employee of Okanogan County,

　　　　　*Defendants - Appellees*.

No. 24-4195

D.C. No. 2:23-cv-00280-TOR

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Thomas O. Rice, District Judge, Presiding

Submitted September 23, 2025[*]
Seattle, Washington

Filed September 23, 2025

Before: M. Margaret McKeown, Richard A. Paez, and
Gabriel P. Sanchez, Circuit Judges.

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Opinion by Judge McKeown

## SUMMARY[**]

### Statute of Limitations

The panel reversed the district court's dismissal, as barred by the statute of limitations, of Christina St. Clair's claims against Okanogan County Sheriff Deputy Isaiah Holloway and his employer, Okanogan County.

St. Clair alleges she was coerced into sexual encounters by Holloway, who had knowledge of her drug addiction and criminal involvement, in exchange for his turning a blind eye to her illegal activity. While St. Clair alleges the deputy's misconduct towards her began in 2014, she also alleges his inappropriate contact continued into 2020 and 2021.

The panel reversed the district court's dismissal of St. Clair's claims against Holliday as barred by Washington's governing three-year statute of limitations. The panel held that regardless of whether the inflicted harm is part of a pattern of ongoing conduct, each sexual assault or act of abuse constitutes an "independently wrongful, discrete act" for statute of limitations purposes. Accordingly, St. Clair adequately pled intentional sexual misconduct for the alleged actions that Holloway committed within the three-year limitation period lasting from September 26, 2020, until

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

September 26, 2023.  The district court erred by applying the continuing violation doctrine to these claims.

For the alleged actions that occurred prior to September 26, 2020, St. Clair sufficiently alleged a delayed accrual theory of injury.  Acknowledging that the power imbalance between a law enforcement officer and a vulnerable victim of sexual assault may result in a delayed realization of the underlying harm, the panel held that St. Clair alleged facts that plausibly established she neither knew nor reasonably should have known of her injuries until after September 2020.

With respect to St. Clair's *Monell* claims against Okanogan County, the panel applied the long-standing principle that courts should liberally permit plaintiffs to amend their complaints.  Various facts in St. Clair's first and proposed second amended complaints alleged a cognizable pattern or custom of deliberate indifference to ongoing sexual misconduct at the Okanogan County Sheriff's Office. It was therefore an abuse of discretion to dismiss this claim without leave to amend, and St. Clair should be given an opportunity to amend her complaint.

Because the panel reversed the district court's dismissal of St. Clair's federal claims, the panel also reversed the district court's dismissal of the state law claims against Okanogan County based on a lack of supplemental jurisdiction.

## COUNSEL

Tyler Hotchkiss, Foreman Hotchkiss Bauscher & Zimmerman, Wenatchee, Washington, for Plaintiff-Appellant.

Patrick G. McMahon, Carlson & McMahon PLLC, Wenatchee, Washington; Amanda B. Kuehn, Law Lyman Daniel Kamerrer & Bogdanovich PS, Olympia, Washington; for Defendants-Appellees.

## OPINION

McKEOWN, Circuit Judge:

This appeal highlights the importance of careful application of the statute of limitations in sexual assault cases. Christina St. Clair alleges she was coerced into sexual encounters by an Okanogan County Sheriff's Deputy, who had knowledge of her drug addiction and criminal involvement, in exchange for his turning a blind eye to her illegal activity. While St. Clair alleges the deputy's misconduct towards her began in 2014, she also alleges his inappropriate contact continued into 2020 and 2021.

We draw from the Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101 (2002), and reaffirm our view that, regardless of whether the inflicted harm is part of a pattern of ongoing conduct, an "independently wrongful, discrete act" restarts the clock for filing a claim based on that act. *Pouncil v. Tilton*, 704 F.3d 568, 581 (9th Cir. 2012). We conclude that each sexual assault or act of abuse constitutes an "independently

wrongful, discrete act" for statute of limitations purposes. *Id.* We also conclude that because individuals who suffer such harm may not become aware of or understand the causes of their injuries until years later, St. Clair has alleged a plausible theory of delayed accrual of her injuries. With respect to St. Clair's claims against Okanogan County, we apply our long-standing principle that courts should liberally permit plaintiffs to amend their complaints. Thus, we reverse the dismissal of St. Clair's claims, direct the district court to reinstate her claims against Holloway, and remand to permit her an opportunity to amend her complaint.

## Background

Christina St. Clair brings claims against Okanogan County Sheriff Deputy Isaiah Holloway and his employer, Okanogan County, based on Holloway's sexual misconduct. St. Clair alleges constitutional claims under 42 U.S.C. § 1983, a violation of the Washington Law Against Discrimination, and a civil conspiracy claim against both Holloway and Okanogan County. Her claims against Okanogan County are based on municipal liability under *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). St. Clair also alleges negligent supervision and retention against Okanogan County for its employment of Holloway.

St. Clair alleges that, when Holloway was a sheriff's deputy and detective, he took advantage of her known addiction to methamphetamines and involvement in criminal activity to coerce her into a quid pro quo: In exchange for unwanted sexual contact with him, she would not face

criminal investigation.[1]   According to the complaint, the conduct began in 2014, when St. Clair was addicted to narcotics and engaging in criminal activity.   Holloway encountered St. Clair in his role as a deputy sheriff and began to pressure her into sexual acts.   In December 2014, St. Clair's uncle called the Sheriff's Office and reported to both dispatch and a sergeant within the department that he had discovered Holloway engaged in sexual activity with St. Clair.   St. Clair's uncle also informed the Sheriff's Office that his niece was involved with the criminal justice system and using drugs.   He expressed concerns that Holloway was providing St. Clair favorable treatment in exchange for sex. The Sheriff's Office opened an investigation but did not discipline Holloway; instead, superiors instructed Holloway to stay away from St. Clair and changed his geographic area of assignment.   St. Clair alleges that the Sheriff's Office failed to follow up and ensure that Holloway was no longer pursuing St. Clair, either by monitoring his Automatic Vehicle Location logs, directly contacting St. Clair, or other appropriate means.

Holloway's sexual contacts with St. Clair continued. From 2014 through 2021, they engaged in sexual activity at least twenty times, including communicating over text message and video conferencing platforms.  According to St. Clair, she "did not feel free to refuse or curb the sexual activity with Holloway[,] who had previously arrested her, knew her to be a drug addict, and knew her to have been involved in other crimes, as well as involved with other criminals and drug addicts."   In short, St. Clair alleges she

---

[1] We accept "as true all facts alleged in the complaint."   *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1122 (9th Cir. 2019).

could not consent to sex with Holloway or his sexual advances because she was coerced.

St. Clair alleges that the sexual activity "occurred many times" when Holloway was on duty as a deputy sheriff. During most of their sexual encounters, Holloway wore his Sheriff's Office uniform and arrived in his department vehicle. Some of the sexual encounters occurred in his patrol car. He would "grab her breasts aggressively, to the point her breasts would physically hurt" and "leave hickeys on her breasts." Holloway predominately communicated with St. Clair via the mobile phone he was issued by the Sheriff's Office. Holloway also contacted St. Clair through a fake Facebook profile that he accessed both on and off duty.

Additionally, St. Clair alleges that Holloway used his prior investigation of her involvement in a burglary, for which she had not been charged, to maintain the sexual relationship. Holloway would remind St. Clair about her involvement in the burglary and warn her that no one would believe her regarding their sexual encounters due to her involvement in criminal activity. In fall 2021, Holloway asked St. Clair to meet him for lunch. When they met, he attempted to hug her, blamed his mental health struggles on her, and guilted her for not having more frequent sexual contact with him. This encounter was their last meet-up.

St. Clair states she only came to understand that she had been harmed when she read a news article in November 2021 detailing Holloway's inappropriate sexual conduct with other similarly situated women. She alleges that Holloway, while employed at the Sheriff's Office, engaged in sexual activities with at least six other women who were using drugs and involved with the criminal justice system. The

complaint also alleges that three other employees in the Sheriff's Office engaged in sexual relations with women who used drugs and were involved in criminal activity during the same time period.  After learning about Holloway's pattern of behavior, St. Clair realized that he had used "his position of authority to manipulate her and control her for years."  She "start[ed] experiencing pain, anxiety and other negative effects from her relationship with Holloway," including "trauma, fear and distrust of authority, anxiety and depression as well as damage to her familial relationships."

On September 26, 2023, St. Clair filed her initial complaint against Holloway and Okanogan County.  After Okanogan County filed a motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(6), St. Clair filed her first amended complaint as of right under Rule 15(A)(1).  The County then filed a motion to dismiss the first amended complaint.  Okanogan County and Holloway argued dismissal was warranted because St. Clair's claims were barred by Washington's governing three-year statute of limitations.  *See* Wash. Rev. Code Ann. § 4.16.080(2).  Okanogan County additionally argued St. Clair's alleged facts were too "sporadic" and "threadbare" to support a *Monell* claim.  St. Clair opposed the motion to dismiss and argued her claims were adequately pled while, in the alternative, requesting leave to amend.

The district court granted the Rule 12(b)(6) motion and dismissed the claims against Holloway and Okanogan County with prejudice.  St. Clair filed a motion under Rule 59(e) to alter and amend the judgment, arguing errors of law and fact, as well as new evidence, and included as an exhibit a proposed second amended complaint with changes and additions highlighted.  The district court denied the motion. We reverse and remand.

**Analysis**

## I. Claims Against Holloway

We review de novo the district court's Rule 12(b)(6) dismissal of claims as time-barred by the three-year statute of limitations. *Mills v. City of Covina*, 921 F.3d 1161, 1166 (9th Cir. 2019) (citation omitted). We also review de novo when the statute of limitations begins to run and whether it bars a claim. *Pouncil*, 704 F.3d at 574.

We conclude that because each sexual encounter qualifies as a discrete act, St. Clair has adequately pled intentional sexual misconduct for the alleged actions that Holloway committed within the three-year limitation period lasting from September 26, 2020 until September 26, 2023. For the alleged actions that occurred prior to September 26, 2020, St. Clair also sufficiently alleges a delayed accrual theory of injury.

### A. Discrete Acts

St. Clair's claims of misconduct after September 25, 2020 survive because they fall within three years of her September 26, 2023 filing date. Violations restart the clock when they constitute discrete acts rather than an "inevitable consequence" of an earlier act. *Pouncil*, 704 F.3d at 576 (analyzing statute of limitations in a Section 1983 action).

Our starting point is the Supreme Court's employment discrimination decision in *Morgan*, which held that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." 536 U.S. at 113. The result is that "[t]he existence of past acts and the [injured party's] prior knowledge of their occurrence . . . does not bar [the injured party] from filing charges about related discrete acts so long as the acts are independently discriminatory." *Id.*; *see also*

*Cherosky v. Henderson*, 330 F.3d 1243, 1246 n.3 (9th Cir. 2003) (noting that *Morgan*'s "continuing violations doctrine" applies to civil rights claims). The Supreme Court subsequently clarified that "[a] new violation does not occur" from mere "adverse effects resulting from the past discrimination. But of course, if [a defendant] engages in a series of acts each of which is intentionally discriminatory, then a fresh violation takes place when each act is committed." *Ledbetter v. Goodyear Tire & Rubber Co., Inc.,* 550 U.S. 618, 628 (2007), *superseded by statute*, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111–2, 123 Stat. 5. Building on *Morgan*, in *Pouncil* we held that "the existence of past acts and the claimant's prior knowledge of their occurrence does not bar a claimant from filing claims about related discrete acts, so long as the subsequent acts are independently wrongful and claims alleging those acts are themselves timely filed." 704 F.3d at 583 (citing *Morgan*, 536 U.S. at 113).

The Supreme Court's guidance applies with equal force here. Unwanted, nonconsensual sexual conduct is not an inevitable consequence that necessarily flows from the first such violation by Holloway. Sexual misconduct is not akin to a wage misclassification that is repeatedly enforced. Sexual misconduct need not beget sexual misconduct. Rather, each act is "intentionally discriminatory," rendering each instance of sexual misconduct "a fresh violation." *Ledbetter*, 550 U.S. at 628. Even though St. Clair's complaint emphasizes the compounded coercion, or "grooming," by Holloway over time, it does not follow that Holloway's earlier misconduct shields him via the statute of limitations for his later sexual misconduct. Had Holloway made no sexual overtures to St. Clair from 2014 to 2019 and only contacted her in 2020 and 2021—allegedly exposing

his penis to her in a video call and going to her home uninvited to request sex and grope her, all while on duty— those 2020 and 2021 actions would surely be independent violations.**[2]**  The later acts are neither dependent on the prior violations nor merely "adverse effects resulting from the past discrimination." *Ledbetter*, 550 U.S. at 628.  Holloway's acts, as alleged, are independently wrongful.

Statutes of limitation are meant to provide repose rather than insulate parties from liability for subsequent independent, wrongful acts.  To hold that a later intentional act of sexual misconduct that falls within the statute of limitations is merely an "inevitable consequence" of earlier abuse would create perverse incentives at odds with the civil rights laws at issue. *Pouncil*, 704 F.3d at 576.  Victims of sexual abuse would be deprived of protection from ongoing harassment under the false belief that perpetrators cannot and will not stop their wrongdoing.  Precedent from the Supreme Court and our circuit make clear that that is not the case.  Accordingly, we reverse the dismissal of St. Clair's claims arising from actions by Holloway after September 25, 2020 because the district court erred in applying the continuing violation doctrine to these claims.

### B. Claim Accrual

As for her claims of misconduct prior to September 26, 2020, St. Clair alleges that accrual of her Section 1983 claim was delayed because, due to her age, addiction, and the

---

[2] That St. Clair's criminal involvement was seemingly confined to 2014 through 2016 does not render untimely a claim based on these facts.  As the district court noted, the "crimes that presumptively took place between 2014–2016, which Defendant Holloway could have pursued at any point during his employment," did not end until 2021, bolstering St. Clair's quid pro quo theory.

coercion, she did not understand the nature of the harm until long after the sexual encounters. Her account evokes the sentiment of the Supreme Court's opinion in *Urie v. Thompson*: trauma is like silica dust in the lungs, lurking "unknown and inherently unknowable" until symptoms manifest and their cause is realized. 337 U.S. 163, 169 (1949). This theory rests on the principle that a Section 1983 claim accrues "not just when the plaintiff experiences the injury, but 'when the plaintiff knew or in the exercise of reasonable diligence should have known of the injury and the cause of that injury.'" *Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 581 (9th Cir. 2012) (quoting *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1050 (9th Cir. 2008)).[3] This discovery rule incorporates "some flexibility." *Id.*

The district court held that at the time of the first encounter in 2014, St. Clair "was made aware that her relationship with Defendant Holloway was in exchange for her criminal activity remaining uncharged and unpursued." This reasoning gives rise to the erroneous conclusion that the statute of limitations ran out by 2017, before St. Clair first filed her complaint in 2023. We hold, to the contrary, that St. Clair plausibly alleges sufficient facts that the accrual of her claims was delayed.

Struggling with addiction, fearful of criminal liability, and coerced by Holloway into sexual acts, St. Clair sufficiently alleges evidence at the motion to dismiss stage that the delayed realization of her injuries justifies the delayed filing. Our decision acknowledges that the power

---

[3] Like the district court, we conclude that the same analysis applies to St. Clair's Section 1983, Washington Law Against Discrimination, and conspiracy claims.

imbalance between a law enforcement officer and a vulnerable victim of sexual assault may result in a delayed realization of the underlying harm. As we have previously highlighted, "[m]any victims of sexual assault feel so upset, embarrassed, humiliated, and ashamed about the assault that they do not tell anyone that it occurred." *Mousa v. Mukasey*, 530 F.3d 1025, 1027 (9th Cir. 2008). This observation is consistent with the literature and other cases involving sexual assault. *See, e.g.*, *Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883, 889 (9th Cir. 2017) ("Psychiatric injury and its cause . . . are 'subtler and more complicated' than other injuries." (quoting *Simmons v. United States*, 805 F.2d 1363, 1368 (9th Cir. 1986))); *United States v. Johnson*, 860 F.3d 1133, 1140 (8th Cir. 2017) (noting sexual abuse victims behaviors generally include "not reporting the abuse and not attempting to escape from the abuser"); Michelle Wieberneit et al., *Silenced Survivors: A Systematic Review of the Barriers to Reporting, Investigating, Prosecuting, and Sentencing of Adult Female Rape and Sexual Assault*, 25 TRAUMA, VIOLENCE, & ABUSE 3742, 3747 (2024) (finding that self-blame, shame, and guilt rank among most frequent barriers to reporting sexual violence).

In *Simmons*, we recognized that a mental health counselor's coaxing of a patient into sexual relations can give rise to delayed accrual of a claim because the patient's dependence on her counselor and her shame prevented her from realizing the extent to which he was at fault for her injuries. 805 F.2d at 1367–68. The same holds true here. St. Clair suffered from drug addiction and previously committed crimes. She believed she depended on Holloway, who, as a law enforcement officer, held the power and official authority to impose criminal consequences on St. Clair. Even if, as the district court noted, St. Clair was aware

of the power imbalance from the start of Holloway's conduct, there is ample daylight between that awareness and awareness that such authority is being wielded inappropriately.

Indeed, precisely "what [the plaintiff] knew and when she knew it are questions of fact," better left for a jury. *Simmons*, 805 F.2d at 1368. St. Clair alleges facts that plausibly establish she neither knew nor reasonably should have known of her injuries until after September 2020.

## II.   Claims Against Okanogan County

### A.  *Monell* Claim

St. Clair's *Monell* claim is premised on a policy established by a longstanding practice or custom or, alternatively, deliberate indifference to constitutional rights through a failure to train employees. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989); *Thomas v. County of Riverside,* 763 F.3d 1167, 1170 (9th Cir. 2014). Though the district court held that the *Monell* claim was timely, it also found that St. Clair's complaint "supports only a sporadic collection of the illicit relationships taking place at [the Sheriff's Office], rather than a detailed description of a pattern that would allow the Court to draw the inference of an internal sanctioned practice," or deliberate indifference through failure to train. The district court's analysis improperly found amendment to be futile when, in fact, St. Clair alleges ample facts supporting multiple theories of *Monell* liability and was prepared to remedy the first amended complaint's shortcomings.

Because a "court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), "[w]e review the denial of leave to amend for an abuse of

discretion[] but [] review the futility of amendment de novo." *Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283, 1287 (9th Cir. 2021); *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 972 (9th Cir. 2009) ("[R]equests for leave [to amend] should be granted with extreme liberality.") (citation and internal quotation marks omitted).  This is not a situation where "it is clear, upon *de novo* review, that the complaint could not be saved by any amendment." *Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991) (citation omitted).

Various facts in St. Clair's first and proposed second amended complaints allege a cognizable pattern or custom of deliberate indifference to ongoing sexual misconduct at the Okanogan County Sheriff's Office.  She alleges the Sheriff's Office leadership knew or had reason to know both of Holloway's repeated, long-standing sexual misconduct with numerous victims and of contemporaneous inappropriate sexual conduct by three other deputies.  She also alleges that other deputies' sexual conduct was, like Holloway's, of a quid pro quo nature with women seeking to avoid criminal investigation.  Finally, St. Clair alleges that a 2019 audit by the Washington Association of Sheriffs and Police Chiefs identified deficient policies, practices, and complaint tracking within the Sherrif's Office, but the audit's findings were downplayed and its recommendations not acted upon.  These additional facts provide a basis for a plausible *Monell* claim.   It was therefore an abuse of discretion to dismiss this claim without leave to amend, and St. Clair should be given an opportunity to amend her complaint.

## B.  State Law Claims

The district court dismissed the state law claims against Okanogan County based on a lack of supplemental jurisdiction after dismissing all other claims.  Because we reverse the dismissal of St. Clair's federal claims, the district court can appropriately exercise supplemental jurisdiction over these claims, and the dismissal of those claims should likewise be reversed.  28 U.S.C. § 1367(a).

**REVERSED and REMANDED.**